# CASES

IN THE

# SUPREME COURT OF ILLINOIS.

## CENTRAL GRAND DIVISION.

### JANUARY TERM, 1871.

ADLAI E. STEVENSON *et al.*

*v.*

ANNA B. LOEHR.

57  509
| 85a  109
57   509
187  ¹ 81

1. VENDOR AND PURCHASER—*incumbrance—condemnation for right of way.* If the owner of a tract of land sells it, giving a contract for a deed of general warranty to be made on final payment, and between the sale and the making of the deed a portion of the premises is condemned under the right of eminent domain for a railway track, the incumbrance thus created is not one for which damages can be recovered in an action on the covenants in the deed.

2. Though in case the damages to the land by reason of such condemnation are paid by the railway company to the vendor, and he fails or refuses to account therefor to the vendee, the latter would probably have his option between an action for the damages as money had and received to his use, or an action on the covenants in his deed. The vendor in such case

holds the damages in trust for the vendee, to be accounted for when the purchase money is paid.

3.  If the damages are paid in special benefits to the land, the vendee is regarded as having received, in that manner, the consideration for the condemned portion.

4.  While the damages to the land belong, in equity, to the purchaser, yet, when paid in money, if the security of the vendor would be impaired by the receipt of the same by the purchaser, he might insist they should not be paid until his security be increased to that extent, and the purchaser would have a corresponding right to security if about to be placed in jeopardy by the payment of the damages to the vendor.

5.  SET OFF—*as between vendor and purchaser.* In an action on a promissory note by the payee against the maker, it appeared the note was given for the unpaid purchase money of a tract of land which the vendor had contracted, upon the payment of the note, to convey to the vendee, by deed of general warranty, but the deed was in fact executed before final payment was made, and in the mean time a portion of the land had been condemned, under the right of eminent domain, for a railway track: *Held,* the damages to the defendant, arising by reason of the incumbrance thus created on the land, could not be set off against the note.

APPEAL from the Circuit Court of McLean county; the Hon. JOHN M. SCOTT, Judge, presiding.

This was an action brought by Anna B. Loehr against Adlai E. Stevenson and others, upon a promissory note executed by the defendants to the plaintiff. Upon trial by the court, a jury being waived, judgment was rendered in favor of the plaintiff for the amount of the note. The defendants appeal.

Messrs. STEVENSON & EWING, and Mr. HAMILTON SPENCER, for the appellants.

Messrs. WELDON & BENJAMIN, for the appellee.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court:

We are of opinion, where a person, having a perfect title to a tract of land, sells it, giving a contract for a deed of general

warranty to be made on final payment, and between the sale and the making of the deed a portion of the premises is condemned, under the right of eminent domain, for a railway track, the incumbrance would not be one for which damages could be recovered in an action on the covenants in the deed. Although the legal title does not pass from the vendor by the contract of sale, he holds it from that time merely as security for the payment of the purchase money. The purchaser becomes the equitable and substantial owner, subject only to the right of the vendor to the payment of the purchase money. If allowed to take possession, as is almost universally the case in this State, the vendor can not oust the purchaser so long as the latter complies with the terms of the contract, and the purchaser is liable for the taxes assessed after he takes possession. The relation of the parties is not substantially different from what it would have been if the vendor had given a deed and taken back a mortgage to secure the payment of the unpaid purchase money, except that where only a contract is given, the vendor can insert terms reserving to himself a more efficient remedy in case of default in payment. Should he refuse to convey on payment, the purchaser, it is true, would have to file a bill in chancery to procure his deed, but where there are a deed and mortgage, he would have to file a bill to procure a satisfaction of the mortgage, if the vendor should refuse to cancel it.

In such cases, then, if the railway company, condemning a portion of the land, pays damages, they would belong, in equity, to the purchaser. It is true, if the security of the vendor would be impaired by the receipt of the damages by the purchaser, he might insist they should not be paid to him until his security had been increased to that extent, and the purchaser would have a corresponding right to security, if about to be placed in jeopardy by their payment to the vendor. But the damages belong, in fact, to the purchaser, and if the vendor receives them he must hold them as trustee for the purchaser, to be accounted for when the purchase money is

paid. Suppose the land has doubled in value between the sale and the condemnation. Suppose it has been bought at $100 per acre, and has risen to $200, and the railway takes five acres and pays $1000. Here is a profit of $500, and certainly no one would pretend that the vendor would be entitled to it. He could not, by remitting to the vendee the purchase money at the rate of $100 per acre, claim the right to receive the condemnation money at double that rate.

The condemnation of the land under the right of eminent domain is, in fact, for the purposes of the present question, a sale of it by the purchaser, for which the law secures to him, and he is supposed to receive, full compensation. It is in the nature of a forced sale, it is true, but the responsibility is not upon the vendor. All persons hold their lands subject to the exercise of this right of eminent domain, and it is difficult to see why one holding land under a contract of purchase, and obliged to yield a part of it by this forced sale to the State or to persons clothed with the authority of the State, for full compensation, should have any more claim against his vendor on the covenants in a deed subsequently made, than he would have if he had made a private voluntary sale. If he has himself received the damages from the railway company, without objection on the part of the vendor, it would seem simply preposterous in him to claim, after he receives his deed, that his vendor should also respond to him upon the covenants, for the purchase money of the same land. If, on the other hand, his vendor has received the damages, and refuses to account for them, the purchaser could certainly hold him responsible for them, or probably might, in the event of such refusal, have his option between an action for the damages, as money had and received for his use, or an action on the covenants in his deed.

If, at the condemnation of the land, the damages are not paid in money, but in special benefits to the land, there would be the same reason why the vendor should not be subjected to a suit, after he has made his deed, that there would have been

if the purchaser had received for his own use the damages in money. In both cases he has received the consideration for the forced sale, and should not be permitted to demand it twice. A demand of that sort would, in all cases, be unjust; in the present case it is peculiarly so.

The question is here raised by way of defense to a suit brought by the vendor, Anna B. Loehr, upon a note given by the purchasers for the unpaid portion of the purchase money, the deed having been made before it was paid in full, but subsequent to the making of the original contract. That bore date April 8th, 1867. The deed was given July 31st, 1867, and between these dates the railway company condemned the land. We say the defense in this case is peculiarly destitute of merit, for the agent of Mrs. Loehr saw the president of the coal company which purchased the land, about the time the railway commissioners were assessing damages, and was told by him the company would claim no damages. The agent claimed none for his mother, the vendor, and it was evidently considered by all parties that it would be an advantage, instead of an injury, to have the railway company run its line along the side of the tract, as the land in question, amounting to about two acres, was bought by the defendants for the purpose of raising coal, and they expected increased conveniences in shipping, from having the track laid along the line of their land. Indeed several of the purchasers, who were sworn upon the trial, are candid enough to say that they would rather have the road as it is, than not to have it at all.

The land, then, taken in this case, was paid for in special benefits, which enured to the defendants. It was paid for in this mode, by their virtual consent. They asked no damages, and expected none, from the railway, but when, after the lapse of two years, they are requested by the plaintiff to pay their note, they ask to be permitted to pay a large portion of it by setting up against her the very damages which have already been paid to them by the railway company, with their consent, in special benefits, and which benefits they were obliged, on

33—57TH ILL.

the trial, to admit, so far exceeded the damages that they had been the gainers by the building of the road.

We are of opinion this judgment should be affirmed.

*Judgment affirmed.*