Kuhn v. Freeman.

## JULIUS KUHN v. W. H. H. FREEMAN, et al.

ACTION, *By Assignee of Vendor, against Administrator and Heirs of Vendee, to enforce Payment of Purchase-Money.* A vendor of a piece of land gave to the vendee a title-bond, and received in return one-half of the purchase-money in cash down, and the other half in two promissory notes. Afterward the vendee died, leaving a widow and four children. An administrator was duly appointed. Subsequently, by certain condemnation proceedings, a railroad company obtained a right of way for its road across said land, and paid the damages assessed to the county treasurer. Afterward the vendor assigned the notes to the plaintiff, and also executed deeds to the widow and children according to their respective rights under the law of descents, precisely in accordance with said bond, except that he did not covenant against the use of said right of way by said railroad company, and delivered said deed to the plaintiff, to be by him delivered to the proper parties when said notes were paid. Said deeds were duly tendered, and payment of said notes duly demanded and refused. The plaintiff then commenced this action against the administrator, widow, children, and treasurer, asking judgment against the administrator for the amount of the notes and interest, and against all the defendants that the land and amount of money in the hands of the treasurer should be subject to the payment of the judgment. *Held,* that the action may be maintained.

### Error from Marshall District Court.

JUDGMENT in favor of the defendants, upon sustaining demurrers to the plaintiff's petition, was given at the November Term 1873 of the district court, and *Kuhn,* plaintiff, brings the case here on error. All the material facts are stated in the opinion.

*J. A. Broughten,* for plaintiff:

The petition is sufficient to compel specific performance, and to procure a sale of the land for the satisfaction of the unpaid purchase-money. By the contract of sale, Hamaker, the obligee in the title-bond, became the owner of the land. 6 Johns. Ch. 402; 1 Story's Equity, §§ 790, 1212; Sugden on Vendors, 226; Walker Ch. (Mich.) 175; Adams' Equity, § 140; 5 Kas. 622; 9 Kas. 443; 10 Kas. 406. As the damages allowed by the commissioners for the taking of the rail-

road right of way took the place of the land taken, plaintiff would, for the purpose of procuring satisfaction of the purchase money, be entitled to the damages so allowed.

It may be claimed that the widow and children of the vendee were entitled to covenants against the right of way condemned. But they were not, and any exercise by the sovereignty of the right of eminent domain, is not to be considered as contracted or covenanted against. Rawle on Covenants for Title, 140 to 145, and 184, 185; 6 Mass. 246; 4 Wharton, 86; 38 Mo. 305; 7 Wend. 210; 12 Penn. St. 75; 31 id. 37; 57 id. 273; 102 Mass. 19; 44 Ala. 171; 12 Florida, 9; 6 Bush, (Ky.) 665; 43 Miss. 61, 270; 25 Ark. 152; 34 Geo. 232, 386; 13 Wallace, 655; 1 Washb. Real Prop., 3d ed., 54, 460.

The opinion of the court was delivered by

VALENTINE, J.: On June 29th 1870, Jacob Weisbach was the owner of a certain piece of land in Marshall county. On that day he sold it to Daniel W. Hamaker, for $3,000, receiving one-half in cash down, and the other half in two promissory notes, each for $750, and payable, one in one year, and the other in two years. Weisbach gave a bond for title to Hamaker. On January 16th 1871, Hamaker died, leaving a widow and four children as heirs to said land. On April 3d 1871, W. H. H. Freeman was duly appointed administrator of Hamaker's estate. During the months of August and September 1871, the St. Jos. & Denver City Rld. Company located their road through said land, and commissioners duly appointed for the purpose assessed the damage at $219.80, which amount was duly paid to Charles F. Koester, county treasurer of Marshall county, for the owner of the land. Weisbach assigned said notes to the plaintiff, Julius Kuhn, and also, on June 25th 1873, executed deeds for the land to the widow and children of said Hamaker, according to their respective rights under the laws of descents, and placed them in the hands of Kuhn, to be by him delivered to the proper parties when the notes should be

paid. The deeds were duly tendered, and payment of the notes demanded and refused; and then, on September 4th 1873, said Kuhn commenced this action against said administrator, widow, children, and Koester, to recover a judgment against the administrator for the amount of said notes, and against all the parties to subject the land and the money in Koester's hands to the payment of said judgment. The plaintiff's petition stated all the foregoing, and other facts. The defendants demurred to the plaintiff's petition on the following grounds: "1st.–That said petition does not state facts sufficient to constitute a cause of action against these defendants. 2d.–That said plaintiff has not legal capacity to sue herein. 3d.–That there is a defect of parties plaintiff. 4th.–That there is a defect of parties defendant. 5th.–That there are several causes of action improperly joined." The court below "sustained said demurrer on the ground that said petition does not state facts sufficient to constitute a cause of action," and dismissed the plaintiff's action, over his objections and exceptions.

We think the court below erred. If the plaintiff had any cause of action of any kind, against any one or more of the defendants, even a cause of action on the notes for the amount due thereon, or for any portion thereof, then the court below erred in sustaining the demurrer. And we think the plaintiff had a cause of action. That an action could have been maintained by the plaintiff, on the notes, and to subject the land to the payment of the notes, against Hamaker, if he had lived, and if the railroad company had not obtained said right of way, there can now be no question. (*Courtney v. Woodworth*, 9 Kas. 443; *Stevens v. Chadwick*, 10 Kas. 406; *Curtis v. Buckley*, 14 Kas. 449.) And we can see no sufficient reason why the plaintiff may not maintain the action against the successors of Hamaker, his administrator and heirs, notwithstanding said right of way. It is certainly true, that his administrator, widow, and children have succeeded to all his rights and liabilities, real and personal, which may pass to an administrator and heirs; and it is equally true, that the

28.—15 KAS.

rights and liabilities involved in this case are such as may pass to an administrator and heirs. It is probable that the demurrer was sustained solely because of the condemnation of a strip of the land for said right of way, and because Weisbach for that reason could not convey to said widow and children a perfect and absolute title for said strip of land. There is no other reason that we can think of, and the defendants in error have not chosen to enlighten us upon the subject, by filing a brief or otherwise. This reason we think is not sufficient. None of the usual or ordinary covenants in a deed can be broken by a portion of the land covered by the covenant being taken under the right of eminent domain. The exercise of the right of eminent domain, is the exercise of a sovereign power; and no person is presumed to covenant against the acts of sovereignty. Hence, where the deed has already been executed, and afterward the vendor sues the vendee for the purchase-money, it is universally held that the vendee cannot set up as a defense to the action, that a portion of the land has, since the execution of the deed, been taken under the right of eminent domain, and therefore that some of the covenants in the deed have been broken. Nor can the vendee sue the vendor in such a case in a separate action, on the supposed broken covenant. He must pay the vendor the full amount of the purchase-money, and receive the condemnation money paid as damages for his compensation. This is the only remedy he has. The case at bar however is to some extent different from the above. The deed in this case was not executed at the time when the sale was made; and before the deed was executed the easement of the right of way had attached to the land, so that the vendor cannot now make as absolute and perfect conveyance as he agreed to do. But still this difference in the facts, we do not think, should make a difference in the decision of the question involved. It cannot be presumed when the vendor agreed to make a good and perfect conveyance, that the parties contemplated that he was agreeing to do a thing notwithstanding what might be the future acts of the sovereign authority.

When Weisbach agreed that he would make a good title, he had absolute and complete title to the land. By the agreement and sale, the land became in equity the property of Hamaker. The legal title was allowed to remain in Weisbach merely as a security for the payment of the notes, and may be considered merely in the light of an equitable mortgage. When Hamaker died, the land descended to his widow and children. When the right of way was established it was in fact obtaining an easement on the land of the widow and children of said Hamaker, and not upon the land of Weisbach, and they were entitled to receive the money paid by the railroad company as damages. And Hamaker's estate remained liable to the holder of the notes, just as it was before, for the balance of the purchase-money not yet paid on the notes. But suppose this were not true: what would be the remedy of Weisbach? Or rather, what would be the remedy of Kuhn, the assignee of Weisbach? Even Weisbach, if he still owned the notes, could not rescind the contract, and get the land back, after one-half of the purchase-money had been paid to him by the vendee, and possibly after valuable improvements had been put upon the land. And he certainly could not maintain an action of ejectment for the land. But as Weisbach has transferred his interest in the notes, he cannot maintain an action of any kind. For the same reason that Weisbach could not rescind the contract, nor maintain ejectment, Kuhn cannot do so. And there is this additional reason why Kuhn cannot do so — he never owned the land. But suppose that Kuhn and Weisbach should agree that they would never convey the legal title to said land to said widow and children: how would even that benefit them, while the widow and children continue to hold the equitable title, and the possession of the premises, and have all the benefit and enjoyment of the same? The notes amount to $1,500, exclusive of interest. The damage done to said land was only $219.80, and the widow and children are entitled to draw that amount. Now must Kuhn lose his $1,500, because $219.80 worth of land was converted into money? And it was no fault of

Kuhn, or Weisbach, that said strip of land was taken for a roadway. Neither of them had any power to prevent it. It was taken under the sovereign authority of the state, and therefore it must not be held that any one was blamable or censurable. But all parties must perform their contract just as far as they can, and where they cannot they are excusable. Weisbach has performed his part of the contract just as near as he can. The title he offers to convey is perfect, and absolute, except for said right of way. We think the plaintiff may recover.

The judgment of the court below will be reversed, and cause remanded with the instructions to the court below to overrule both of the demurrers filed in this case, and for such other and further proceedings as may be proper.

All the Justices concurring.