## NIXON v. MARR.†

### (Circuit Court of Appeals, Eighth Circuit.   October 9, 1911.)

### No. 3,586.

**1. VENDOR AND PURCHASER (§ 134*)—CONDEMNATION PROCEEDINGS—TIME OF PASSING OF TITLE OR RIGHT—CONSTITUTIONAL PROVISIONS.**

Under section 24 of the Bill of Rights of the Constitution of Oklahoma, which provides that where private property is condemned for a public use, "until the compensation shall be paid to the owner or into court for the owner the property shall not be disturbed or the proprietary rights of the owner divested," the mere pendency of condemnation proceedings relating to property does not affect the right of the owner to sell the same, nor his power to convey a perfect title; and where the owner sold certain lots, which he contracted to convey free of incumbrance, received half the purchase money, and executed a warranty deed, which was placed in escrow, to be delivered when the other half was paid, the fact that the city had filed a petition to condemn right of way for a street across the lots before the contract was made, on which an appraisement and award of damages were subsequently made, but no further action taken, did not entitle the purchaser to recover damages by way of set-off when sued on the contract, but as the equitable owner of the property he was entitled to the award when paid by the city.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 250–254; Dec. Dig. § 134.*]

**2. EMINENT DOMAIN (§ 197*)—CONDEMNATION PROCEEDINGS—RIGHT TO DISMISS.**

As a general rule of law, in the absence of statutory provisions, a condemning party may dismiss or abandon condemnation proceedings at any time before the easement title passes and the rights of the parties become vested.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 527: Dec. Dig. § 197.*]

**3. VENDOR AND PURCHASER (§ 269*)—REMEDIES OF VENDOR—ENFORCEMENT OF LIEN—TITLE RETAINED AS SECURITY.**

A vendor of real estate by a contract under which he surrendered possession and deposited the deed in escrow, to be delivered on payment of the final installment of the purchase price, has the right to treat the contract as a mortgage, and foreclose the same by suit in equity, on default in payment.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 269.*]

Sanborn, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Eastern District of Oklahoma.

Suit in equity by S. W. Marr against J. Truman Nixon.   Decree for complainant, and defendant appeals.   Affirmed.

Haskell B. Talley, for appellant.

A. J. Biddison (Harry Campbell, on the brief), for appellee.

Before SANBORN, Circuit Judge, and MARSHALL and WM. H. MUNGER, District Judges.

WM. H. MUNGER, District Judge.   The parties in this case, on the 20th day of September, 1909, entered into an agreement, by the

terms of which Marr agreed to convey to Nixon in fee simple, clear of all incumbrances whatsoever, by a good and sufficient warranty deed, lots 1, 2, 3, 4, 5, and 6, in block 4, Hodges' addition to the city of Tulsa, Okl.; Marr to pay the taxes on lot 4 for the year 1909, and Nixon to pay the taxes for said year on the remaining property, and Marr to have the privilege of keeping a hay barn on the lot until the hay was removed, and to thereafter remove the barn from the premises, not later than July 1, 1910. Nixon agreed to pay for said property the sum of $4,975—$100 on signing the contract, as earnest money, $2,387.50 on delivery of a good warranty deed and abstract, and $2,487.50 in 60 days from the said 20th day of September; said warranty deed and abstract to be deposited in escrow in the Bank of Commerce during said 60 days. Two days thereafter, on the 22d day of September, Marr and wife executed a deed to said premises with full covenants of warranty and deposited the same, with abstract of title, in escrow in the Bank of Commerce. Nixon paid the $100 and the $2,387.50 as agreed, and went into possession of the premises. Failing to pay the $2,487.50, Marr, on the 12th day of March, 1910, brought this action to recover the balance of such purchase money, and to have the same declared a lien upon said premises, and the same sold in payment therefor.

Nixon, in his answer, admits the execution of the contract and the deed, payment of a portion of the purchase price, and that the last payment of $2,487.50 was unpaid, but claims that the city of Tulsa had, prior to the executing of said contract and deed, taken steps to condemn a street 65 feet wide across said lots, by filing the proper petition in the district court for Tulsa county for the appointment of commissioners to appraise the damages. By reason thereof Nixon claimed damages.

From the record it appears that on May 28, 1909, the board of commissioners of the city of Tulsa filed a petition in the proper district court, alleging that, on the ———— day of May, 1909, said board of commissioners passed a resolution declaring the necessity of opening and extending East Second street over, through, and across certain lots, among them being lots 1, 2, 3, 4, and 5, in block 4, in Hodges' addition. The petition prayed for the appointment of three commissioners to assess the damages. No action seems to have been taken on this petition until the 7th day of October, when Marr was served with a notice by the sheriff of Tulsa county that an application for the appointment of such commissioners to assess damages would be made on the 18th day of October, 1909, at 9 o'clock a. m., or as soon thereafter as counsel could be heard, to the judge of the district court in said county, at his chambers, etc., which notice Marr gave Nixon, on what date is not disclosed. On the 14th day of October, 1909, the board of commissioners of said city filed in said district court an amended petition for the same purpose, describing the property to be taken more minutely. No notice seems to have been served of this petition. On the 18th day of October the application of the board was heard by the judge of the district court, and commissioners appointed, who appraised the

damages and reported the same to the court.   No further proceedings appear to have been taken.

[1] The real question presented is whether in this action Nixon is entitled to have set off against the balance of the purchase price damages sustained by reason of the diminution in value of the property by reason of an appropriation of a portion thereof by the city for a street.   This, we think, depends upon whether, at the date of the contract of sale, the city had appropriated or acquired a vested right to the property in question for street purposes.

Section 24 of the Bill of Rights of the Oklahoma Constitution provides as follows:

"Private property shall not be taken or damaged for the public use without just compensation.   Such compensation, irrespective of any benefit from any improvements proposed, shall be ascertained by a board of commissioners of not less than three freeholders, in such manner as may be prescribed by law.   The commissioners shall not be appointed by any judge or court without reasonable notice having been served upon all the parties in interest.   *   *   * Until the compensation shall be paid to the owner or into court for the owner, the property shall not be disturbed or the proprietary rights of the owner divested."

The statute of the state of Oklahoma, relative to eminent domain procedure, is in harmony with this constitutional provision; provides for an application or petition to the judge of the district court, upon 10 days' notice to the opposite party, for the appointment of commissioners to assess the damages; and provides that upon payment by the corporation to the clerk of the court, for the use of the owner, of the sum assessed as damages by the commissioners, the party may enter upon the premises and construct the improvement. The statute also provides for an appeal by either party from the award of damages.

Under the foregoing constitutional provision, it seems clear that the owner of the property cannot be disturbed in his possession, or in any of his proprietary rights, until the compensation due him has been first ascertained by the commissioners appointed for that purpose, and the amount thereof paid to the party or into court.   The commissioners, on the 3d day of November, 1909, made a report, assessing the damages.   The clerk of the district court testified as a witness that:

"The report was the last thing ever done; no order made after that."

It seems clear, under the constitutional provision before mentioned, that the city did not, by such proceedings, acquire a vested right to the premises for street purposes.   This it could not do, under the constitutional provision, without first paying to the owner, or into court, the amount of the damages assessed, which it has not done.

It is unnecessary to review the numerous and conflicting decisions in the several states, relative to at what stage of condemnation proceedings property may be said to be appropriated.   Most of the decisions brought to our attention are based upon statutory provisions respecting the matter, and not upon a constitutional provision, expressly providing, as does the Oklahoma Constitution,

that *"until the compensation has been paid to the owner, or into court for the owner, the property shall not be disturbed or the proprietary rights of the owner divested."* (Italics our own.) Up to such time the owner has a clear and perfect right to sell and convey the premises, either by executory contract or by deed passing the fee-simple title.

In Lewis on Em. Dom., vol. 2 (3d Ed.) § 895, it is said:

"The passage of an ordinance to widen or extend a street, or the filing of a map of a proposed street, or the doing of other similar acts of a preliminary nature, does not affect the property proposed to be taken; and a transfer of the property after such acts will have the same effect as though made before, and will vest in the grantee the title to the property and right to the compensation when the taking is consummated. Where the title vests in the condemnor by virtue of certain ex parte acts, such as the making and filing of a location, as is permitted in some of the states, the right to compensation vests in the person who is owner at the time the title vests in the condemnor. * * * After the right to compensation has once vested, it becomes a personal claim, and does not pass with the land. * * * A conveyance pending proceedings to condemn transfers to the vendee the right to the award when made. Where the confirmation of the award vests the right to compensation and obligates the condemnor to take and pay for the property, a transfer of the property after the confirmation does not transfer the right to the award. But where the award or judgment merely fixes the price at which the condemnor may take the property, and the condemnor has the option to take or not, a conveyance vests the right to the compensation in the vendee."

The author cites numerous authorities, which fully support the text, and they need not be referred to here. See, also, note to Fort Wayne & S. W. Traction Co. v. Fort Wayne & W. R. Co., 16 L. R. A. (N. S.) 537.

[2] It may be stated, as a general rule of law, in the absence of statutory provisions, that a condemning party may dismiss or abandon condemnation proceedings at any time before the easement title passes and the rights of the parties become vested. District of Columbia v. Hess, 35 App. D. C. 38, 28 L. R. A. (N. S.) 91, and note; 7 Enc. Pl. & Pr. 674. So, here, the city had a perfect right to abandon the proceeding, and if the city should take no steps to pay the damages awarded, and conclude the proceedings within a reasonable time, it might well be presumed that they had been abandoned.

In this case, the contract of conveyance was made and one-half of the purchase price paid before the city took any steps towards condemnation proceedings other than filing the petition in May preceding, and, at the time of the filing of the amended petition, giving notice of the application for the appointment of appraisers, Nixon was the equitable owner of the premises and entitled to the compensation.

In Lewis on Em. Dom. § 518, supra, the law is stated as follows:

"In case of an executory contract of sale, it is generally held that the vendee is entitled to the compensation, on the ground that he is the equitable owner of the property and that what is taken is subtracted from what he is to receive from his contract, while the vendor remains entitled to the whole amount of the purchase money agreed to be paid."

Counsel for appellant cite and place much reliance upon the cases of Cavenaugh v. McLaughlin, 38 Minn. 83, 35 N. W. 576, and Kares

v. Covell, 180 Mass. 206, 62 N. E. 244, 91 Am. St. Rep. 271. In the former case, the Supreme Court of Minnesota held that a resolution by the city council, declaring the necessity for an appropriation of the property for a highway, prior to the conveyance, constituted such an appropriation that the vendee was entitled to rescind. In the latter case, the Supreme Judicial Court of Massachusetts held that where a party had given a bond for a conveyance free from incumbrance, and subsequent to the giving of such bond, but prior to the giving of a deed, a portion of the land was appropriated for highway purposes, the vendee was entitled to rescind. In this case, appellant is not claiming a rescission, but damages. To entitle him to rescind, he should offer to surrender back to Marr the possession of the premises.

Cases more nearly identical to the one at bar, which have been called to our attention, are Stevenson v. Lochr, 57 Ill. 509, 11 Am. Rep. 36, in which it was held that, where the owner of a tract of land sold it, giving a contract for a deed of general warranty to be made on final payment, and between the sale and the making of the deed a portion of the premises was condemned under the right of eminent domain for a railway track, the incumbrance thus created was not one for which damages could be recovered in an action on the covenants in the deed, and that in an action on a promissory note by the payee against the maker the damages to the defendant arising by reason of the incumbrance thus created on the land could not be set off against the note.

Kuhn v. Freeman, 15 Kan. 423, was a case in which the vendor of a piece of land gave to the vendee a title bond, and received in return one half of the purchase money in cash down, the other half in two promissory notes. Afterwards the vendee died, and subsequently, by certain condemnation proceedings, a railroad company obtained a right of way for its road across said land, and paid the damages assessed to the county treasurer. In a suit upon the notes against the administrator, it was held that the party could recover the amount of the notes and interest, as the amount awarded in the condemnation proceedings belonged to the vendee.

We are clearly of the opinion that no proprietary right of Marr to the premises in question had been appropriated by the condemnation proceedings, and that he had good right to make a perfect sale; that Nixon, as purchaser, took subject to the power of the state to exercise the right of eminent domain; that he was entitled to receive the damages assessed, and, if dissatisfied with the same, could have intervened and appealed from such award; that the damages resulting from the condemnation proceedings are no defense to the action for the recovery of the balance of the purchase price.

[3] It is further claimed upon the part of appellant that the court had no jurisdiction of the case as one in equity; that Marr's remedy was simply to recover the purchase price at law. We think, however, that the equitable title was in Nixon, that the retention of the legal title by Marr was merely as security, and that he was entitled to treat the contract as a mortgage and foreclose the same in a court of equity.

This view is fully sustained in Smith v. Kirchner, 7 Okl. 166, 54 Pac. 439; Lewis v. Hawkins, 23 Wall. 119, 23 L. Ed. 113.

The judgment of the court below, in favor of Marr, as prayed, was right, and is affirmed.

SANBORN, Circuit Judge (dissenting). Marr expressly agreed in the contract of sale to convey the real estate to Nixon 60 days after September 20, 1909—that is to say, on November 19, 1909—"in fee simple, clear of all incumbrances whatever by a good and sufficient warranty deed," and Nixon agreed to pay him on that day the $2,487.-50 for which this suit was brought. A deed in escrow is not delivered, and does not take effect, until the party holding the escrow delivers it to the grantee, and an agreement that the deed in escrow shall be delivered to the grantee at a certain time is an agreement that it shall then first take effect. Washington v. Ogden, 66 U. S. 450, 456, 17 L. Ed. 203; Durham v. Hadley, 47 Kan. 73, 81, 27 Pac. 105; O'Neill v. Douthitt, 40 Kan. 689, 20 Pac. 493; George v. Conhaim, 38 Minn. 338, 37 N. W. 791, 792; Murphin v. Scovell, 41 Minn. 262, 265, 43 N. W. 1; Michigan Home Colony Co. v. Tabor, 141 Fed. 332, 336, 337, 72 C. C. A. 480; Century Dictionary, title "Escrow"; Black's Dictionary, title "Escrow."

When the time came for this conveyance and payment, the city of Tulsa had, by the exercise of its power of eminent domain, acquired the indefeasible right to take a strip through this land for a public street, by paying the award which the commissioners had made therefor. Nixon alleged in his answer that, without notice of any condemnation proceedings, he made the contract to buy this land free from all incumbrances "for the special and particular purpose, which purpose was well known to the complainant, of using said property as a storage yard for pipes, steel derricks, casings, building, and outhouses"; that the right which the city had acquired to take the property by paying the award constituted an incumbrance on the title on November 19, 1909, which diminished its value $2,487.50, so that Marr could not then convey it clear of incumbrances, as he had agreed to do; and he asked that the amount of his damages be set off against Marr's claim to recover the $2,487.50. The majority of the court say, upon this state of facts:

"The real question presented is whether in this action Nixon is entitled to have set off against the balance of the purchase price damages sustained by reason of an appropriation thereof by the city for a street. This, we think, depends upon whether, at the date of the contract of sale, the city had appropriated or acquired a vested right to the property in question for street purposes."

But this is a suit in equity instituted by Marr to enforce specific performance of this contract of sale, and there is no doubt that in such a a suit the vendee may remain in possession of the property and recoup any damages he has sustained on account of any failure or inability of the vendor to comply with his agreement to convey a good title free from incumbrances. Williams v. Neely, 134 Fed. 1, 5, 67 C. C. A. 171, 175, 69 L. R. A. 232, and cases there cited; Farmers' Loan & Trust Co. v. Denver Railway Co., 126 Fed. 46, 50, 51, 60 C. C. A.

588, 592, 593; Burnes v. Burnes, 137 Fed. 781, 791, 70 C. C. A. 357, 367.

On November 19, 1909, the date on which Marr, on September 20, 1909, had agreed to convey the title to this land clear of all incumbrances, it was subject to the indefeasible right or option of the city of Tulsa to purchase the strip through it for a street for the fixed price, for the amount of the award of the commissioners. This option or indefeasible right neither Marr nor Nixon could remove. And the unavoidable effect of these facts seems to me to be that this right in the city to take this strip by paying the fixed price was an incumbrance upon Marr's title, that he could not convey the title subject to this incumbrance clear of all incumbrances, as he had agreed to do, and that Nixon had the right in this suit in equity to recoup or set off the damages he had sustained on account of Marr's inability and consequent failure to convey, or to offer to convey, the title clear of this incumbrance. And an examination of many opinions of courts has convinced my mind that the stronger reasons and the great weight of authority—indeed, as it appears to me, all the direct authority on the precise question here at issue—sustains this conclusion. Johnston v. Callery, 173 Pa. 129, 33 Atl. 1036; Maloy v. Holl, 190 Mass. 277, 76 N. E. 452, 453; Kares v. Covell, 180 Mass. 206, 62 N. E. 244, 91 Am. St. Rep. 271; Cavenaugh v. McLaughlin, 38 Minn. 83, 35 N. W. 576; Copeland v. McAdory, 100 Ala. 553, 13 South. 545, 546.

In the case last cited, which was an action for the breach of a covenant against incumbrances in a deed on account of a right of way for a street, the court, after reviewing numerous authorities, said upon this subject:

"When, as in this case, there is not a failure of title, the fee remaining in the grantee, but a part of the land is subject to a perpetual easement, which may not be removed by the payment of money, the measure of damages is the depreciation of value by reason of the incumbrance."

Conceding now, as the majority contend, that from the date of the contract, September 20, 1909, Nixon became the equitable owner of this land, that he was entitled to the subsequent award for its taking by the city for a street, and that the title to the right of way over this street had not vested in the city, because it had not paid the award on November 19, 1909, the date on which Marr had agreed to convey the land to Nixon clear of all incumbrances, nevertheless the incumbrance, the city's option, its indefeasible right to take this strip by paying the award, Marr's inability to convey the title on November 19, 1909, clear of this incumbrance, as he had agreed to convey it, and Nixon's damages for Marr's breach of his agreement, and his right to recoup these damages in this suit in equity or to set them off against his contract to pay for the land remained in effect.

The fact that after the contract was made Nixon was the equitable owner of the land and entitled to any award for its condemnation did not deprive him of Marr's agreement to convey the legal title to him on November 19, 1909, clear of all incumbrances, nor of his right to recoup, set off, or recover his damages for the breach of that agreement. The equitable ownership and possession of land by a vendee

under an executory contract neither satisfies nor releases his vendor's covenant therein to convey the legal title to him free from incumbrances at some future time. And, in my opinion, the vendee's ownership in equity, his right to the award, and the condition of the title when the contract was made and dated are immaterial in this case, and the only question it presents is: Was Marr's legal title clear of all incumbrances on or after November 19, 1909, the date on which he had agreed so to convey it? The condition of the title at the date of the contract is immaterial, because the removal of any incumbrance then existing prior to November 19, 1909, would have enabled Marr to convey the property free from that incumbrance.

Nor is it to my mind any answer, to the claim of Nixon that the title to this land was incumbered, that the city had not on November 19, 1909, exercised its option, had not enforced its right, had not paid the award and acquired the perpetual easement which it had the right to acquire by the payment of that award. The claim here is not that the legal title or the proprietary right to the land or to the easement had vested in the city on November 19, 1909, but it is that the city then had an option to purchase it for a fixed price, and therefore an incumbrance upon it. Any right to or interest in land, consistent with the passing of the fee, which diminishes its value or its use, is an incumbrance. 3 Washburn on Real Property, § 2385; 1 Tiedemann on Real Property (3d Ed.) § 617. And an indefeasible option or right in a third person to purchase land, or a perpetual easement over it for a price certain, is an incumbrance upon the title of the owner, although that option has not been exercised or enforced, and such a right the city had acquired before the day on which Marr had agreed to convey the title to this property clear of all incumbrances.

To the suggestion that Marr can and will convey to Nixon the land and the right to the award, subject to this right of the city to take the strip through the land for a street upon payment of the award, the answer is that this is not what Marr contracted by his written agreement to convey. He agreed to convey the title to this land free of all incumbrances, and a conveyance of the land subject to the right of the city to take the strip through it for a street upon the payment to Nixon of a price certain is not such a conveyance. Would a conveyance by a vendor of a tract of land worth $10,000, subject to an indefeasible right in a third party to purchase it by paying $5,000 to the vendee, constitute a performance of a vendor's prior contract to convey a good title to the land to the vendee free of all incumbrances? If the city had condemned for streets all the tract of land in this case for which Nixon agreed to pay $4,975, and the commissioners had awarded only $1,000 damages for the taking, before November 19, 1909, the day Marr had agreed that he would convey the property clear of all incumbrances, would his conveyance of this land and the right to the $1,000 have constituted a conveyance of the land and its title clear of all incumbrances? No more is his tendered conveyance of this land and the right to the present award of the commissioners, subject, as the title is, to the city's right to take the strip for a street upon its payment of the award already made.

If, subsequent to the date of the contract and prior to November 19, 1909, the lien of taxes had attached to this land, that lien would have constituted an incumbrance, and Marr could not have performed his contract to convey on the latter day free from incumbrances until he had removed that lien. Densmore v. Haggerty, 59 Pa. 189, 190; Wilson's Ex'r v. Tappan, 6 Ohio, 172, 175; Nunngesser v. Hart, 122 Iowa, 647, 649, 98 N. W. 505; Clinton v. Shugart, 126 Iowa, 179, 183, 184, 101 N. W. 785; 1 Warvelle on Vendors (2d Ed.) § 179.

In Kares v. Covell, 180 Mass. 206, 62 N. E. 244, 91 Am. St. Rep. 271, the vendor gave a bond for a deed of a good title free from all incumbrances, and between the date of the bond and the time for the delivery of the deed about one-fourth of the land was condemned for a highway. The vendee sued to rescind the contract and to recover back what he had paid, and the vendor defended on the grounds that: (1) The title was to be free from incumbrances at the date of the bond for the deed, and not at the time fixed for the delivery of the deed; but the court said:

"It would seem to be clear that, when by the terms of this preliminary contract it is provided that when the time comes for the execution of the final contract the land is to be conveyed by a good and sufficient warranty deed of the obligor, conveying a good and clear title to the same free from all incumbrances, the language refers to the title which is to pass by the deed, and not to the state of things existing at the time of the preliminary contract."

And this is clearly so in the case in hand, for Marr could have conveyed on November 19, 1909, free of any incumbrance on the property on September 20, 1909, which he had removed prior to November 19, 1909, and it was doubtless with the purpose of giving him an opportunity so to do that the contract to convey free of incumbrance 60 days after its date was made. (2) That the vendee became the equitable owner of the land from the date of the bond for the deed, and consequently the agreement to convey at a future time related to the date of the bond, and not to the date of the delivery of the deed; but the court decided that the contract of the vendor was to convey at the time of the delivery of the deed a title clear of incumbrances. (3) That the agreement was to convey free of any incumbrance the vendor created; but the court held that it was to convey free of all incumbrances, that a condemnation proceeding constituted an incumbrance, and that the vendee should recover.

In Cavenaugh v. McLaughlin, 38 Minn. 83, 35 N. W. 576, the vendee paid $250 in part payment for a contract of sale of land and took a contract from the vendor which provided that the sale should be completed within 15 days after the delivery of the abstract of title, that if the title should be found defective the agreement should be void and the $250 should be refunded, but that if the title was found good and the vendee did not complete his purchase he should forfeit the $250. An examination of the records disclosed the fact that the common council of the city of St. Paul had made an order for the widening of a street and the taking of 10 feet off the east side of the contracted premises for the purpose, but no award of damages had been made or paid. Nevertheless the vendee refused to take the property, and

brought a suit to recover back the $250 on the ground that the title was defective, and the Supreme Court of Minnesota sustained his action. Answering the contention made in that court, as it is here, that the vendee could not recover because he was the equitable owner of the property and would receive the award of damages for the taking for the street, Chief Justice Gilfillan said:

"A conveyance, indeed, at any time before the condemnation proceedings had culminated in a vested title in the city, would have passed to the grantee the right to receive the damages allowed for the taking; but, evidently that alone was not what the plaintiff expected to get, and the defendant expected to pass to him. The land and a good title (without defects) was what was stipulated for. It must be concluded that by good title was meant one indefeasible by reason of anything existing and affecting the land at the time."

In the opinion of the majority the two cases which have just been cited are noticed, and the suggestion is made that the vendees in those cases rescinded their contracts, while Nixon enforces his and seeks to recover damages for the breach thereof. But these decisions are even more compelling than they would have been if the actions there had been for damages, because an action for damages is maintainable in every case of this nature that will sustain a rescission, but there are many cases of this class which will sustain actions for damages, but will not sustain suits for rescission, because the parties cannot be put in statu quo. In every case of this nature, as the Supreme Judicial Court of Massachusetts well said in Kares v. Covell, 180 Mass. at page 208, 62 N. E. at page 245, 91 Am. St. Rep. 271:

"The plaintiff may, at his election, take what the defendant can give him, and hold the defendant answerable to him in damages as to the rest, or, where the parties may be put in statu quo, he may rescind the contract and recover back the money he has paid."

Nixon has elected to take what the vendor can give him and to hold him answerable in damages for the rest, and according to these decisions he is entitled to his damages in this suit.

It was the settled law in the state of Pennsylvania that the title of the owner of land was not divested by condemnation proceedings until compensation was made for the taking or security therefor was given. In Johnston v. Callery, 173 Pa. 129, 33 Atl. 1036, a contract of sale was made whereby the vendor agreed to convey the land free of incumbrances, and the Supreme Court of that state held that it was a good defense to an action for the purchase price that before the time for the delivery of the deed a railroad company had selected and adopted a line of railroad across the land, although no award of damages had been made and no compensation for the proposed taking had been made or secured.

The majority cite in support of their view Stevenson v. Loehr, 57 Ill. 509, 11 Am. Rep. 36, and Kuhn v. Freeman, 15 Kan. 423; but neither of those cases involved the liability for the breach of an executory contract to convey land or title clear of all incumbrances, while that question, as we have seen, was involved, was carefully considered, and determined in the three cases which have just been reviewed. Stevenson v. Loehr was an action on promissory notes of

vendees, and their defense was that the covenants of a general warranty deed which they had accepted had been broken to their damage by the condemnation by a railroad company of a right of way across the land before they received the deed. The court held that the condemnation conferred special benefits upon the land which the defendants purchased far in excess of the damages caused thereby, so that in these benefits they had received all the damages they had sustained by the condemnation and more, and that they could not recover these damages again by setting them off against their notes to the vendor. It also held that the purchaser was, after the contract of sale was made, the equitable owner of the land and entitled to any damages awarded for its taking. But these questions are not involved in this suit, nor is their decision controlling, and the liability of a vendor for the breach of an executory contract to convey clear of incumbrances by reason of a condemnation after the date of the contract and before the time for the delivery of the deed was neither presented, argued, considered, nor decided in Stevenson's Case.

Kuhn v. Freeman was an action on the promissory notes of a deceased vendee against his legal representative. It presented by demurrer the single question whether or not the complaint on these promissory notes stated any cause of action. The plaintiff pleaded that the vendee had agreed to purchase the land for $3,000, that he had paid $1,500 and had given the notes for the balance, that he had died intestate, that one of the defendants was the administrator of his estate, that the vendor had tendered to the heirs of the vendee deeds of the property subject to a right of way for a railroad across it which a corporation had acquired by condemnation proceedings after the date of the contract of sale, and for which it had paid the award of the commissioners, $219.80, to the county treasurer. The court rightly overruled the demurrer, for the pleading clearly stated a cause of action on the notes, and there was no plea or suggestion that the incumbrance diminished the value of the land more than the $219.80 to which the defendants were entitled. The contract for sale in that case was a bond for a deed. Bonds for deeds commonly except from the agreement to convey free from incumbrances all incumbrances accruing subsequent to their dates (Dunn v. Yakish, 10 Okl. 388, 61 Pac. 926), and the probability is that there was such an exception in the bond in that case, for nothing is said about an executory agreement to convey free from incumbrances. There is in the opinion some desultory discussion of the effect of a condemnation of land upon the covenants in a deed, but no consideration or decision of the question in the case at bar—the question whether or not an executory covenant to convey at a stated future time clear of all incumbrances can be performed without removing the indefeasible right which a stranger has acquired after the contract and before the agreed date of conveyance to purchase a perpetual easement over a portion of the land for a street or a railroad by paying a fixed price therefor. The opinions of the courts which treat that question hold, and what seem to me the stronger reasons persuade, that it cannot.

In my opinion the defendant below was entitled to prove and to recoup the damages he sustained on account of the right which the city of Tulsa acquired to purchase the perpetual easement over the strip of land through his property for the amount of the award of the commissioners, and it was reversible error to deny him that right.