[Civ. No. 3668.  Second Appellate District, Division Two.—April 29, 1922.]

## G. F. BLOCK, Respondent, v. CITIZENS TRUST AND SAVINGS BANK (a Corporation), Appellant.

[1] VENDOR AND VENDEE—EXECUTION OF GOOD AND SUFFICIENT DEED —FREEDOM FROM ENCUMBRANCES MADE BY VENDOR—CONSTRUCTION OF CONTRACT.—Where a contract for the sale of land which provides that the vendor, upon the payment of the full purchase price, will execute "a good and sufficient deed of grant conveying said land," also provides that the vendor will deliver a certificate of title showing title to the property vested in the vendor free from all encumbrances "made, done or suffered" by the vendor, the use of the expression "good and sufficient deed" will not be construed as requiring the vendor to convey a title free and clear of all encumbrances, but only from encumbrances made, done, or suffered by the vendor.

[2] ID.—PENDENCY OF CONDEMNATION PROCEEDING — NATURE OF ENCUMBRANCE.—The pendency of a condemnation proceeding is an "encumbrance," but it is not one which is "made, done or suffered" by the vendor.

---

2. Pending condemnation proceedings as breach of covenant against encumbrances, note, 36 **L. R. A.** (**N. S.**) 1067.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Charles S. Burnell, Judge.   Reversed.

The facts are stated in the opinion of the court.

Hunsaker, Britt & Cosgrove for Appellant.

Randall, Bartlett & White and Walter J. Little for Respondent.

FINLAYSON, P. J.—This is an appeal from a judgment in favor of plaintiff in an action to recover the purchase price of a certain parcel of land that defendant had agreed to convey to plaintiff, the latter claiming the title to be defective.   The true construction of defendant's contract of sale is the only question involved.

The findings disclose a situation substantially as follows: On September 11, 1913, plaintiff and defendant entered into a written contract whereby defendant agreed to sell and plaintiff agreed to buy a lot of land in Los Angeles County for the sum of six hundred dollars, payable in certain monthly installments.   The agreement contains a clause as follows: "The first party [defendant] upon receiving payment of the full amount, . . . agrees to execute and deliver unto the party of the second part [plaintiff] a good and sufficient deed of grant conveying said land, and to deliver a good and sufficient certificate of title issued by the Title Insurance & Trust Co., showing title to said property vested in the party of the first part [defendant], free from all encumbrances, *made, done or suffered by said first party.*"   Plaintiff, who seems to have been put in possession immediately upon the execution of his contract to purchase, made all the payments required of him under the terms of his contract, including taxes; and on May 10, 1919, he made his final payment, which at that time was five months overdue.

On April 29, 1919, which was shortly prior to plaintiff's final payment, the Los Angeles County Flood Control District, a political subdivision of this state, commenced in the superior court for Los Angeles County an action of eminent domain to acquire by condemnation an easement in and over certain lands, including an easement in and over the

westerly sixty feet of the land which defendant had agreed
to convey to plaintiff.  Such easement was sought by the
flood control district for the purpose of providing and main-
taining a fixed and definite channel for certain waters by
erecting embankments and walls on the right of way
sought to be condemned.  The plaintiff here, the vendee,
was not a party to that action.  His vendor, this defendant,
was, however, made a party defendant to the condemnation
suit, though its time to answer therein had not expired
when this action was tried.  On the day when the condem-
nation suit was commenced, April 29, 1919, a *lis pendens*
was recorded in the office of the county recorder, giving due
notice of the pendency of that action.  At the date of the
trial of the present action the condemnation suit had not
been set for trial.  Pursuant to the power conferred by
section 14 of article I of the constitution as amended on
November 5, 1918, an order was made in the condemnation
suit on May 14, 1919, authorizing the flood control district
to take immediate possession and use of the right of way
described in the eminent domain proceedings.  Though the
flood control district has not as yet taken actual possession
of the right of way which it is seeking to obtain over the
westerly sixty feet of the land in question here, it has
taken constructive possession thereof.

Some time between the 19th and 25th of May, 1919, de-
fendant tendered to plaintiff a deed, duly signed and
acknowledged and sufficient as to form, purporting to con-
vey to plaintiff the property in question.  At the same time
defendant tendered to plaintiff. a certificate of title, issued
and executed by the Title Insurance & Trust Company of
Los Angeles on May 19, 1919, certifying that the title to
the whole parcel of land is vested in defendant free from
all encumbrances except "an action commenced April 29,
1919, and now pending in the superior court, entitled *Los
Angeles County Flood Control District* v. *Stephen A. Arm-
strong, Citizens Trust and Savings Bank, a Corporation, et
al.,* brought to condemn the west sixty (60) feet of said lot
for the construction and maintenance of a channel for the
flood waters of the Los Angeles, San Gabriel, and other
rivers."  The certificate of title further stated that "notice
of the pendency of the said action was recorded April 29th,
1919, in book 76, page 19 of notices of actions"; and also

that "on May 15, 1919, an order was entered authorizing plaintiff' [the flood control district] to take immediate possession and use of the right of way as described in the complaint [in the condemnation action], the money deposits required by law as security having been made pursuant to the order of the court."

Though defendant has continued ready and able to make his tender good, plaintiff refuses to accept the offered deed and certificate of title because of the pendency of the condemnation proceedings, the recording of the *lis pendens,* and the making of the order authorizing the flood control district to take possession of the right of way sought to be condemned.

[1] Whether respondent, the vendee, is entitled to rescind his contract to purchase and recover the purchase money which' he paid to appellant, the vendor, depends upon the construction that should be placed upon appellant's covenant "to execute and deliver unto the party of the second part [respondent] a good and sufficient deed of grant conveying said land, and to deliver a good and sufficient certificate of title . . . showing title to said property vested in the party of the first part [appellant], free from all encumbrances, made, done or suffered by said first party."

There are cases which lend color to the view that where condemnation proceedings are commenced after the making of a contract of sale but before the time for its completion by a conveyance, the institution of such proceedings will not affect the vendee's duty to complete the purchase. The reason given by the courts which adhere to this view is that the purchaser is regarded in equity as the owner from the time of the making of the contract, and, as such equitable owner, is entitled to the damages which may be awarded in the condemnation proceedings, and the exercise of the right of eminent domain confers upon the plaintiff in the condemnation suit an independent and not a derivative title. (27 R. C. L., p. 500; *Nixon* v. *Marr*, 190 Fed. 913 [36 L. R. A. (N. S.) 1067, 111 C. C. A. 503]; *Clarke* v. *Long Island Realty Co.*, 126 App. Div. 282 [110 N. Y. Supp. 697]. See, also, *Stevenson* v. *Loehr*, 57 Ill. 509 [11 Am. Rep. 36].) Other cases take the view that if the vendor has agreed to convey a good title, free and clear

of *all* encumbrances, the condemnation proceeding, if pending when the time arrives for the execution of a conveyance to the vendee, constitutes an encumbrance or defect in the vendor's title justifying the purchaser in refusing to complete the purchase and giving him the right to recover the purchase price. (27 R. C. L., p. 500; *Kares* v. *Covell,* 180 Mass. 206 [91 Am. St. Rep. 271, 62 N. E. 244]; *Cavenaugh* v. *McLaughlin,* 38 Minn. 83 [35 N. W. 576]; *Johnston* v. *Callery,* 173 Pa. St. 129 [33 Atl. 1036]; *Miller* v. *Philips & Co.,* 44 Wash. 226 [87 Pac. 264].) The cases on both sides of the question are reviewed in the majority and dissenting opinions in *Nixon* v. *Marr, supra.* We do not find it necessary to determine which of those two conflicting views is supported by the better reasoning. We shall assume, for all the purposes of this decision, that the correct doctrine is that last stated; that is, we shall assume that where the vendor has obligated himself to convey a good title, free and clear of all encumbrances, the pendency of condemnation proceedings at the time when the vendee becomes entitled to his deed will entitle the latter to reject the title and sue for the recovery of any purchase money that may have been paid by him to his vendor.

As we construe the language of appellant's covenant, there was no agreement to give respondent a good title, free and clear of *all* encumbrances. Appellant covenanted to do two things: (1) to execute "a good and sufficient deed of grant conveying said land," and (2) to deliver a certificate of title showing title to the property vested in appellant as the vendor, free from all encumbrances "made, done or suffered" by appellant. Though there are two parts to appellant's covenant, each part calling for the performance of a separate and distinct act, the subject matters of the two are so correlated that the two clauses should be read together, and the intention of the parties respecting the meaning of each division of the covenant be ascertained by a consideration of the covenant as a whole, each clause throwing an illuminating light upon the other and disclosing the exact limits of the covenant and the true meaning of appellant's promise to execute "a good and sufficient deed." The whole question is one of intention, to be ascertained by a consideration of all the language used by the parties.

If, instead of covenanting to execute a good and sufficient deed and to give a certificate of title showing title in itself free and clear of all encumbrances "made, done or suffered" by it, appellant had simply covenanted to execute "a good and sufficient deed," making no mention of any certificate of title, we would have had no trouble in construing appellant's covenant as meaning that the parties intended that a good and sufficient title should be conveyed, as well as that a deed, good and sufficient in form, should be executed; for the doctrine recognized by the later authorities is that, as a general rule, a covenant simply calling for a good and sufficient deed goes not merely to the form of the instrument but also requires that the vendor shall transfer a good title, i. e., a marketable title, such as shall be free from all reasonable doubt and clear of all encumbrances or material defects. (27 R. C. L., p. 486; 11 Am. Dec., p. 34 et seq., note to *Porter* v. *Noyes;* 39 Cyc. 1446; *Haynes* v. *White,* 55 Cal. 38.) Or if, instead of covenanting to execute "a good and sufficient deed," appellant had expressly covenanted to execute a good and sufficient deed *and* to convey a good title, its express promise to convey a good title doubtless would have been construed as calling for such title, even though the covenant also contained a provision that appellant, as vendor, would furnish a certificate showing title vested in itself free only from encumbrances "made, done or suffered" by it. But appellant did not expressly covenant to give a good title. It covenanted to execute a good and sufficient deed and to furnish a certificate of title that was not required to show the title free of *all* encumbrances but only of such encumbrances as might be "made, done or suffered" by appellant. And though a covenant to execute "a good and sufficient deed" is usually construed as calling for the conveyance of a good title, nevertheless, the context may show a contrary intention, as we think it does in the present case. When appellant's undertaking to give a "good and sufficient deed" is read in the light of the contextural undertaking to furnish respondent with a certificate showing title in appellant free from encumbrances made, done, or suffered by the latter, it is clear that in this case the parties intended, by their use of the words "good and sufficient deed," no more than a grant

conveying to respondent a title free from such encumbrances as might have been made, done or suffered by appellant; that is, free from such encumbrances as the certificate of title was required to show. This is so because the very object of a certificate of title is to enable the vendee to pass upon the validity of the title for which he is bargaining. It is to enable him to know if he can get what he has purchased, and whether his vendor has and can convey all he has undertaken to sell. (*Mead* v. *Fox,* 6 Cush. (Mass.) 199, 201.) Though this Massachusetts case presents the reverse of the situation that we have here, it is quite in point with respect to the construction which should be placed on appellant's covenant. It has been held in Massachusetts from an early date, as it formerly was in this state (*Brown* v. *Covillaud,* 6 Cal. 566, 573; *Green* v. *Covillaud,* 10 Cal. 317, 322), that a covenant for "a good and sufficient deed" relates to the form and execution of the deed and not to the title. (*Aiken* v. *Sanford,* 5 Mass. 494.) But in *Mead* v. *Fox, supra,* it was held that because the parties stipulated that the vendee should have "ten days to examine the title," it manifestly was their intention that the vendors should convey a good and clear title, the court saying: "By the terms of the sale, ten days were allowed purchasers to examine the title. Purchasers could have no other object in examining the title than to see if the plaintiffs could make a good title; and there could be no object whatever in ascertaining whether or not the plaintiffs could make a good title unless they were bound to make such title, and the purchaser was entitled to have a good and clear title made to him, in order to bind him to the performance of his contract of purchase. The purchaser was allowed time to examine the title, to see if he could get what he had purchased, and whether the plaintiffs actually had and could convey what they had undertaken to sell." By a parity of reasoning, it should be held that in the present case the purpose of the certificate of title was to enable the purchaser to see if he could get what he had purchased and whether his vendor had and could convey what he had agreed to sell, and that, therefore, the parties contemplated the conveyance of such title as was to be shown by the certificate of

title, namely, a title free only of encumbrances made, done or suffered by appellant.

[2] That the pendency of a condemnation action is an "encumbrance," but that it is not one which is "made, done or suffered" by the vendor, seems obvious. If any authority be needed for the proposition that the pendency of condemnation proceedings constitutes an encumbrance, it may be found in the reasoning pursued by Circuit Judge Sanborn in his dissenting opinion in *Nixon* v. *Marr, supra.* It is not, however an encumbrance that is "made" or "done" by the vendor; nor is it one that is "suffered" by him. An encumbrance upon property suffered by the vendor means one within his power or duty to avoid. "Suffer," in this connection, implies responsible control; and it cannot be held to apply to a thing not caused by the act of the party nor within his power to prevent. (*Crist* v. *Fife,* 41 Cal. App. 511 [183 Pac. 197]; *Smith* v. *Eigerman,* 5 Ind. App. 269 [51 Am. St. Rep. 281, 31 N. E. 862].)

For the foregoing reasons we conclude: (1) That appellant undertook, not to execute a deed conveying the title free and clear of any and every encumbrance, but to execute a deed conveying the title free of all encumbrances "made, done or suffered" by appellant; (2) that neither the pendency of the condemnation suit nor the order authorizing the plaintiff therein to take possession of the easement which it was seeking to condemn was an encumbrance "made, done or suffered" by appellant; and (3) that, as a consequence, the deed which appellant tendered to respondent would convey to the latter all the title that appellant, as vendor, had agreed to convey. It follows, therefore, that, upon the facts found by the court below, the judgment should have been in appellant's favor.

The judgment is reversed and the lower court is instructed to enter a judgment on the findings adjudging that plaintiff take nothing by his action and that defendant recover its costs.

Works, J., concurred.

CRAIG, J., Dissenting—I dissent. As is stated in the opinion of the majority of the court the appellant, the

vendor in the contract, covenanted to do two things. First, to execute "a good and sufficient deed of grant conveying said land"; second, to "deliver a good and sufficient certificate of title . . . showing title to said property vested in the party of the first part free from all encumbrances, made, done or suffered by said first party." The dispute between the parties upon this appeal centers upon the construction of the provisions above quoted. The appellant concedes that if he had simply agreed to deliver a good and sufficient deed without mentioning the character of the title to be conveyed, a stipulation would exist by implication that the deed must carry with it a good and sufficient title. *Haynes* v. *White,* 55 Cal. 38; 39 Cyc. 1446, is authority for this proposition. But it is argued that the provision, "and to deliver a good and sufficient certificate of title showing title to said property vested in the party of the first part free from all encumbrances made, done or suffered by said first party," is a qualification of the phrase just preceding it, to wit, "agrees to execute and deliver to the party of the second part, a good and sufficient deed of grant conveying said land." However, the plain meaning of the entire provision under consideration, governed by rules of grammatical construction, is that the vendor was to do two distinct and independent acts. The purpose of the provision for a certificate of title is not merely to describe the kind of title required. Such a stipulation was unnecessary. It had been definitely defined by the agreement to execute "a good and sufficient deed of grant conveying said land." The intention of the parties concerning a requirement for a certificate of title is rather to be ascertained by a consideration of the following well-recognized legal principles.

The rule in the purchase of land is *caveat emptor.* In the absence of an agreement by the vendor to furnish an abstract or certificate of title it is incumbent upon the purchaser to provide the same and to satisfy himself as to the condition of the title. (*Easton* v. *Montgomery,* 90 Cal. 307 [25 Am. St. Rep. 123, 27 Pac. 280].) The object of an abstract is to benefit the purchaser and to enable him or his counsel to pass more readily upon the sufficiency of the title. (*Kane* v. *Rippy et al.,* 22 Or. 296 [23 Pac. 180]; *Taylor* v. *Williams,* 2 Colo. App. 559 [31 Pac. 504].) In

the case last cited it was further held that a provision for the delivery by the vendor "of warranty deed conveying clear title with abstract" was not complied with by proof that the title was in fact complete and perfect. The court held that the contract was to furnish a certain abstract and not merely good title. *Smith* v. *Taylor*, 82 Cal. 538 [23 Pac. 217], is another case of the same character. The contract called for an abstract of title which would show good title. The vendor furnished an abstract of title which showed defects. Upon the trial he claimed the right to show that the claims of persons appearing in the abstract which constituted the apparent defects were groundless. The court held that under the contract there in question proof of the actual condition of the title was inadmissible to show compliance with the stipulation that the abstract should show good title. In *Kane* v. *Rippy, supra,* the contract provided that the vendor should convey "in fee simple, clear of all encumbrances, by a good and sufficient warranty deed and abstract of title." The court held that by this stipulation the vendor agreed to convey a good title free from all encumbrances whatsoever and to furnish an abstract of such title and that the abstract which was furnished was admissible in evidence not, however, for the purpose of proving title, but to show the condition of the abstract itself. From these cases it is apparent that the covenants for good title and for abstract of title are not interdependent.

As to whether or not any abstract of title shall be required is purely a matter of contract between the parties. Where the vendor agrees to the purchase "with abstract showing good title" this refers to record title only. However, the contract sued upon in *Moot* v. *Business Men's Assn.*, 157 N. Y. 201 [45 L. R. A. 666, 52 N. E. 1]), provided for a search as to the actual title and not as to the record title of the property in question. It is obvious that the nature and scope of the certificate of title is purely a matter of agreement. In the instant case the parties expressly stipulated that the vendor should not only execute and deliver to the vendee "a good and sufficient deed of grant conveying said land," but also deliver to the vendee "a good and sufficient certificate of title issued by the Title Insurance & Trust Company showing title to said

property vested in the party of the first part free from all encumbrances made, done or suffered by said first party.'' The purpose of the latter requirement for a certificate of title was to relieve the vendee from the necessity of investigating the public records of the county concerning the existence of any encumbrances ''made, done or suffered by the vendor.'' As to all other encumbrances, however, the vendee impliedly agreed to make his own investigation and the rule *caveat emptor* applies. In our endeavor to discover the intention of the parties another fact worthy of consideration and one which can hardly be in doubt is that the vendee would not have signed a contract to purchase this lot, being an ordinary residence lot 50 by 130 feet, with the expectation and understanding that the vendor might only convey to him a lot 50 by 70 feet. If this is true, unless the language of the contract necessarily requires such a construction, a court of equity should not interpret it in such a manner as to force the vendee to accept a piece of property which he obviously had no intention of buying. I conclude that the provision of the contract concerning the furnishing of a certificate of title does not relieve the vendor from the obligation to supply ''a good and sufficient deed of grant conveying said land,'' which means that the vendor must have good and sufficient title, one complete and perfect for alienation; that although the provision concerning the certificate of title may have been complied with by the vendor, the stipulation to execute and deliver a good and sufficient deed of grant conveying the land required the vendor to possess and tender a good and sufficient title. (*Easton* v. *Montgomery,* 90 Cal. 307 [25 Am. St. Rep. 123, 27 Pac. 280], and *Whittier* v. *Gormley,* 3 Cal. App. 489 [86 Pac. 726].) The pendency of the condemnation proceeding, the *lis pendens*, and the order of the court giving the flood control district possession of the strip 'being condemned is clearly such a defect of title as to violate the agreement in that respect. If authority is needed for this proposition, *Prentice* v. *Erskine,* 164 Cal. 446 [129 Pac. 585] and *Koshland* v. *Spring,* 116 Cal. 689 [48 Pac. 58], supply it. Appellant attempts to distinguish these cases from the one at bar upon the ground that the defects in the title existed at the time of the execution of each of the contracts. The

vendor having contracted to deliver a good title, no reason is suggested, nor do we perceive any to exist relieving the vendor from a violation of his covenant because of the fact that such violation is due to an occurrence taking place subsequent to the time that the contract was executed.

A petition for a rehearing of this cause was denied by the district court of appeal on May, 24, 1922, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 26, 1922.

All the Justices concurred.

Shurtleff, J., was absent and Richards, J., *pro tem.*, was acting.