[S. F. No. 439.    Department One.—March 2, 1897.]

# SIMON KOSHLAND ET AL., RESPONDENTS, *v.* F. S. SPRING ET AL., APPELLANTS.

VENDOR AND PURCHASER—CONTRACT OF SALE—EXCEPTIONS—CONDITION—
CONSTRUCTION OF CONTRACT FOR GOOD TITLE—IMPAIRMENT OF TITLE
BY DEDICATION OF STREETS—RECOVERY OF DEPOSIT.—A contract to
convey a specified tract of land, which had been platted for a townsite,
excepting from the conveyance certain railroad rights of way, and any
lots or parts of lots, streets or parts of streets theretofore sold and con-
veyed, or contracted to be sold, and to pay therefor the price of $400
an acre, on condition that the title should prove good and satisfactory
to the purchaser, is not to be construed as a contract to sell within the
exterior boundaries of the tract only so many acres as were owned by
the vendor at the time of the sale; but the exceptions made are suscep-
tible of ascertainment, and the residue is within the requirement of a
good title, and streets which have become highways by dedication, and
which are not within the exceptions, are an impairment of title to the
remainder of the tract agreed to be sold, which justifies the purchaser
in refusing to complete the contract, and in demanding a return of the
purchase money deposited conditionally under the contract.

ID.—CONTRACT FOR SURVEY AND PLAT—ASSENT TO RECORDED MAP—OFFER
TO DEDICATE—DEEDS REFERRING TO MAP—AGENCY.—Where the own-
ers of land have expressly authorized the survey and platting of the
land into lots, blocks and streets, the map of which has been made, and
filed in the recorder's office, and have joined in several conveyances all
referring to such map for description, they have, by the approval of the
map, offered to dedicate all the streets marked thereon, and their intent
to dedicate is fairly apparent, regardless of whether the person with
whom a contract was made to survey and plat the land, and to negotiate
sales thereof, subject to specified conditions, was or was not, in strict-
ness, their agent.

ID.—REVOCATION OF OFFER—CONVEYANCE TO VENDEE OF PURCHASER—DE-
SCRIPTION BY EXTERIOR BOUNDARIES—REFERENCE TO MAP IN EXCEP-
TIONS.—Although ordinarily a conveyance of a tract by exterior
boundaries shows a design to revoke an unaccepted offer of dedication
of streets therein; yet such conveyance to the vendee of a purchaser
does not have that effect, where the contract of purchase was made by
the same general description before any offer of dedication was made,
and where the deed to the second vendee expressly excepts a large
number of blocks and parcels of land by reference to the map.

ID.—EXTENT OF OFFER AND ACCEPTANCE—QUESTION OF FACT—STREETS NOT
BOUNDING LOTS SOLD.—Whether the owner of land by making sales
according to a recorded map has made the offer of dedication with refer-
ence to other streets than those by which the lots sold are bounded, is
a question of fact, to be determined from the circumstances of each
case, such as the number of sales, their proximity to the street claimed
to have been dedicated, the use to which the land has been put, and the
means by which, or the extent to which the streets have been brought

into connection with other streets and highways; and similar consider.
ations must govern when the inquiry concerns the extent to which the
offer has been accepted, or the extent of the rights of purchasers of lots
in the tract.

ID.—DOUBTFUL TITLE—RIGHTS OF PURCHASER.—A purchaser who has con-
tracted for a title which shall prove good and satisfactory to him, is
not bound to complete the purchase unless the title is found to be free
from litigation, palpable defects and grave doubts.

ID.—CONDITION FOR GOOD TITLE—KNOWLEDGE OF DEDICATION—WAIVER.—
Where the vendors have obligated themselves in express terms to make
a good title to the tract sold as a condition of the sale, it seems that
knowledge of the fact that streets have been dedicated to public use,
which impairs the title, cannot be deemed a waiver of the condition
while the contract remains executory.

ID.—CONSTRUCTION OF CONTRACT—IMPLICATION FROM EXPRESS EXCEPTION.
A contract providing for the sale of a townsite, by expressly excepting
streets and parts of streets previously sold or contracted to be sold, im-
plies, from the terms of the exceptions, that the vendors assume the
right to sell the remaining streets.

APPEAL from a judgment of the Superior Court of
Alameda County and from an order denying a new trial.
F. B. OGDEN, Judge.

The facts are stated in the opinion.

*Edward J. Pringle,* and *P. G. Galpin,* for Appellants.

*Daniel Titus,* and *I. B. L. Brandt,* for Respondents.

BRITT, C.—Plaintiffs agreed with defendants for the
purchase of certain land, and deposited with the latter
five thousand dollars as earnest money pending investi-
gation of the title.   This action was brought to recover
such deposit, plaintiffs claiming that the title was not
good or satisfactory; defendants denied the defects al-
leged, and filed a cross-complaint to compel specific per-
formance of the contract.   The court below held with
the plaintiffs.   The facts of the case are numerous and
have not much interdependence; a somewhat extended
statement of them is necessary to an understanding of
the dispute.

The contract of the parties bore date August 27, 1887;
by its terms F. S. and J. R. Spring, the defendants,
agreed to sell to plaintiffs all that tract of land in Ala-

meda county which was conveyed by the sheriff of said county to one Grogan by deed dated October 24, 1876, reference being made to such deed for description of the bargained premises, "said parties of the first part [the Springs] now being the owners thereof; provided, however, that the title to said lands and premises shall prove good or satisfactory to said parties of the second part [Koshland et al.], and not otherwise; excepting and reserving from said lands and premises any lots or parts of lots, streets or parts of streets that may have been heretofore sold and conveyed or in writing contracted to be sold by said parties of the first part or either of them, for the price or sum of four hundred dollars per acre of all the lands in said tract now owned and belonging to said parties of the first part or either of them." Within the time allowed for examination of title and ascertainment of the acreage in the tract, the purchasers stated their objections to the title and demanded return of their deposit.

The premises conveyed by the deed of the sheriff to Grogan were therein described by monuments, courses, and distances, "containing three hundred and four acres more or less," excepting therefrom (1) a strip of land one hundred feet wide in the middle of which ran the track of the Central Pacific railroad extending across the tract a distance of more than half a mile, (2) another piece fifty feet wide and one thousand feet long, in the eastern part of the tract, adjacent to the strip first reserved, and which had been conveyed to the railroad company for purposes of a station, (3) twenty-two blocks of land "situate in the town of Decoto" and known and designated by numbers and letters upon a map of Decoto entitled "Plan of Decoto Land of the Decoto Land Company, Alameda Valley." It is thus seen that the subject of the treaty between plaintiffs and defendants was a tract containing three hundred and four acres, less the portions owned by the railroad company and twenty-two specified blocks, excepted in the deed of the sheriff to Grogan, and diminished also by a further ex-

ception in the contract of "any lots or parts of lots, streets or parts of streets, that may have been heretofore," *i. e.*, before August 27, 1887, "sold and conveyed, or in writing contracted to be sold" by defendants or either of them.   The map of Decoto mentioned in the Grogan deed showed the whole tract platted into lots, blocks, and streets, traversed by the line of railroad, bounded east, north, and northwest by county roads, and two of such blocks marked as ' Parks.'   The controversy here concerns mainly the streets delineated on the map exterior to those parts of the tract reserved from the contract of sale; such streets included an area of about ninety acres, and plaintiffs contend that the same had become in consequence of the acts of defendants and their predecessors in interest impressed with an easement in favor of the public and of individuals tantamount to dedication thereof for public use, to the serious impairment of the title.   Defendants deny that such easement exists to any extent incompatible with their contract, and claim ability to make good title to about two hundred and thirty-eight acres, and that plaintiffs should pay them therefor the stipulated price of four hundred dollars per acre.

On November 6, 1869, the tract—by which term we designate the entire body of three hundred and four acres—was owned by Ezra, John, and Adolphus Decoto, brothers, and on that day they entered into a written contract with one Brown by which they authorized him to enter upon the land and lay out the same in lots, blocks, and streets, and to negotiate sales of lots—reserving several of the blocks to the Decotos; they agreed to execute deeds to the purchasers of lots from Brown, they to receive the proceeds of the sales up to the sum of $42,000, and convey to Brown the remaining land after sales of that amount had been made.   Brown, on his part agreed, among other covenants, that he would " cause said lands to be platted and divided into lots and blocks and streets for sale."   January 8, 1870, Brown assigned his interest in such contract to the Decoto Land

Company, a corporation, the instrument of assignment providing that the latter should fulfill Brown's engagement with the Decotos. Such corporation entered upon the land and surveyed and staked it into lots, blocks, streets, and parks, and made the aforesaid map thereof, and on July 9, 1870, filed such map in the office of the county recorder; it also planted many thousand trees on the tract, disposing them around the blocks along the curbline of the prospective sidewalks. There were 131 blocks in all, many of them fractional.

The only sale made in the year 1870 was evidenced by a deed to one Hastings, in which the Decoto Land Company and the three Decoto brothers joined, of four lots in block C "in the town of Decoto" as laid down on the said map. Block C was one of the twenty-two blocks excepted from the contract between plaintiffs and defendants. On January 10, 1871, the Decotos conveyed by deed to said company the entire tract, described by metes and bounds, excepting therefrom in favor of the railroad the strips of land already mentioned, and reserving also said twenty-two blocks; the excepted portions were described by reference to said map in the recorder's office. Contemporaneously with this deed, and to secure a portion of the purchase money unpaid, the company executed to the Decotos a mortgage on the premises, described in the same manner and with like exceptions as in the deed. About the same time the Decotos and said company joined in a deed of nine of such excepted blocks, described by reference to the map, to F. S. Spring, one of the appellants here; such nine blocks lay in an oblong body on both sides of the railroad, intersected by several cross streets, and extended from the eastern boundary of the tract westerly about half the width thereof, and included a majority of the lots afterward sold in the nascent town. All the deeds and contracts above mentioned were recorded in the county recorder's office at or near the respective times of their execution. July 28, 1871, the Decoto Land Company conveyed eighty-

eight blocks, as shown on the map, to F. S. Spring; the deed was not recorded until April 26, 1875. Meanwhile, the appellant J. R. Spring had become the assignee of said mortgage, and on April 24, 1875, he began a suit for its foreclosure; in due course the land described in the mortgage was sold under the decree of foreclosure and Grogan became the purchaser thereof and received the sheriff's deed referred to for description in the contract which gave rise to this action. On February 2, 1877, Grogan conveyed the same premises to said J. R. Spring.

Prior to the action for foreclosure, F. S. Spring made divers sales of lots in the nine blocks conveyed to him in January, 1871; his deeds of such lots described them as being in the town of Decoto, or by reference to said map; neither he nor any of the purchasers from him were parties to that suit. After the sheriff's deed, J. R. Spring made, or agreed to make, conveyances, seven in number, to as many different purchasers of lands in the tract outside the excepted twenty-two blocks; some of his deeds described the premises conveyed by reference directly to the map; others by metes and bounds, and some of the latter included portions of streets marked on the map; one may be noted specially: It was executed July 3, 1883, by J. R. Spring, to the trustees of a school district, and granted block 102, "marked on a sketch map made for the late Decoto Land Company, . . . . together with the right of way on H street to the railroad, and a right of way to the Bell Ranch road." The latter road bounded the Decoto tract on its easterly side. On this block a public schoolhouse was built, and school was kept. Said deeds of J. R. Spring appear to have covered all, or nearly all, the parcels excepted from the contract with plaintiffs as "lots, or parts of lots, streets, or parts of streets, heretofore conveyed and sold, or contracted to be sold." F. S. Spring, in the years from 1875 to 1887, also made a number of sales out of his excepted blocks near the railroad station, his conveyances referring more or less

directly to the map for description. In 1887 about forty families resided on lots sold and reserved within the tract, and there were some business houses near the station; "Railroad avenue," so-called on said map, was the main thoroughfare across the tract from east to west, and was graveled and maintained as a highway by the county; portions of two other streets were in like manner maintained as highways. Parts of a few streets outside the limits of the excepted blocks were traveled to some extent, and more or less marked by narrow wagon roads or trails. In some instances purchasers of lots extended their fences across adjacent streets; and all the western portion of the tract, perhaps one-third or more of its area, was, for many years before 1887, fenced, ploughed, and cultivated; the two blocks marked as 'parks' on the map were in a barley field. It seems, from the foregoing, that Decoto was a townsite, laid out in a rural district on a tract of land nearly half a square mile in extent, having a railroad station within and near its eastern boundary, around which grew a straggling village; the town failed to attract population as its projectors hoped, and a large, it may be the greater, part of the site reverted to its original state of agricultural fields.

1. It is said by defendants that the contract recognizes some dedication of streets, but provides for the sale of all the land owned by them; that the case "does not involve the sale of a certain ranch, farm, or parcel of land, with boundaries defined or definable. . . . . This was not a contract to sell all the land within the outside boundary of the sheriff's deed. It was a contract to sell within that boundary only so many acres as the appellants owned at the time of the sale"; and, upon this view of the contract, it is claimed, as we understand the defendants, that they have the right to an ascertainment by the court of the acreage to which their title may be proved perfect, whether little or much, and to be paid therefor by plaintiffs at the contract rate. We dissent from such a construction of

the contract; we are disposed to think it doubtful, on the facts appearing, whether specific performance could be had in any event if the agreement is so indefinite as to its subject matter. But we see no uncertainty as to the premises which defendants agreed to sell; these were all the land conveyed by the sheriff's deed of October, 1876, except " any lots, or parts of lots, streets, or parts of streets, that may have been heretofore sold by the parties of the first part," etc. All the exceptions within the exterior boundaries specified in the deed of the sheriff were susceptible of exact ascertainment, and so the residue on which the contract was to operate was capable of like definition, and was within the requirement of the contract for good title.

2. The owners of the land offered to dedicate all the streets marked on the plat. Appellants contest this conclusion with much vigor, but it seems to result from the evidence. The Decoto brothers, by their contract with Brown, in 1869, expressly assented to the platting of the land into lots, blocks, and streets for sale; provided for their own participation in the benefits of the scheme and the reservation to themselves of some of the platted blocks. When Brown's assignee had fulfilled Brown's agreement relative to the survey and plat, the owners signified their approval of such performance by joining in the conveyances to Hastings, to the railroad company, and F. S. Spring, all referring to the map for purposes of description. The intent of the owners to dedicate was fairly apparent, whether or not Brown was in strictness their agent. (*People* v. *Beaudry*, 91 Cal. 213; *Griffiths* v. *Galindo*, 86 Cal. 192.)

3. We think, also, that the evidence does not bear out the further contention that the offer made was "repudiated, as a whole, by the owners, and was afterward renewed only as to the special streets expressly contemplated by the terms of the contract." Although in the deed made by the Decoto brothers to the Decoto Land Company the tract was described as a whole by its exterior confines, a mode of description regarded as in-

dicative of a design to revoke an offer of dedication (*Archer* v. *Salinas City*, 93 Cal. 53), yet the circumstance loses its importance when we consider that it was by a similar description adopted before any map was made that the Decotos had bound themselves to convey the land to Brown, to whose interest the land company succeeded, and that in the same deed twenty-two blocks, as well as other parcels, were excepted by reference to the map. No greater effect can be allowed to the foreclosure of the mortgage executed simultaneously with such deed, and which contained the same description of premises; the foreclosure may have rendered nugatory the deed of eighty-eight blocks made by the land company to F. S. Spring in July, 1871, but it did not affect the precedent steps toward dedication taken by the Decotos alone and jointly with the land company; nor the consequence of sales by F. S. Spring to purchasers who were not parties to that suit, and had succeeded ratably to his interest in all the streets. Regarding the conveyances made by J. R. Spring out of the land acquired by him as the result of the foreclosure, they cannot be said to evince a design for any general revocation of the previous offer to dedicate; rather for the most they treat the streets as present utilities for access to the lots sold with a potential character of public ways; for example, the deed of block 102 to the school district, "together with the right of way on H street."

4. It is said that if any of the deeds of lots made by either J. R. Spring or F. S. Spring operate indirectly toward a dedication of streets in other parts of the tract, "such dedication must be accepted by respondents as a necessary part of the exceptions of the contract of sale." This is a corollary of the proposition that the parties agreed for the sale of whatever land within exterior limits defendants had good title to, and falls with that theory of the contract for reasons already stated. But it remains to consider whether those conveyances and the concomitant formation of a village community did have such tendency—it being borne in mind that there

had been an offer to dedicate all the streets marked on the map of the tract, and that such offer was, to some extent, accepted. Appellants claim that there was no dedication to public use except of "Railroad Avenue" and parts of two other streets, and that "no rights of purchasers extended beyond these streets, unless it be to such rights of way as were attached 'of necessity' to the reserved blocks"; all of which were within the exceptions of the contract; and, by way of illustration, they say it is "preposterous to presume that the man who bought a lot near the depot contracted for an immediate right of way through streets half a mile off, upon which he could not walk without destroying growing grain of his vendors." They cite Civ. Code, 1104, and various cases claimed to be in consonance with their view. Plaintiffs urge, on the other hand, that by platting the land into streets, etc., and the sale of lots by reference to the map, there was an irrevocable dedication of all the spaces called streets on the map to the use of the public; also, that the grantors impliedly covenanted with each purchaser of a lot, bounded upon a street represented on the map, that the street should be permanent, of the width and length depicted on the plan.

Language is used in *San Leandro* v. *Le Breton*, 72 Cal. 170, which justifies the contention of respondents regarding the effect of a plat exhibiting streets and sales of lots with reference thereto; but the doctrine has been modified by subsequent decisions; *Cerf* v. *Pfleging*, 94 Cal. 131; *Schmitt* v. *San Francisco*, 100 Cal. 302. The present attitude of this court upon the question is reflected in *Archer* v. *Salinas City*, 93 Cal. 53: "Whether the owner, by making sales according to such map or designation, has made the offer with reference to other streets than those by which the lots sold are bounded, is a fact which the court must determine from the circumstances of each case, such as the number of sales, their proximity to the streets claimed to have been dedicated, the use to which the land has been put, the

means by which, or the extent to which, the streets have been brought into connection with other streets or highways." Necessarily, similar considerations must govern when the inquiry concerns the extent to which the offer has been accepted, or the extent of the rights of purchasers of lots in the tract. This doctrine is decisive of the present case. Plaintiffs were not bound to complete the purchase unless defendants' title was found to be free from litigation, palpable defects, and grave doubts. (*Turner* v. *McDonald*, 76 Cal. 177; *Sheehy* v. *Miles*, 93 Cal. 288. As to many streets marked on the plan of Decoto, it may be that any offer to dedicate them has been withdrawn, and they are no qualification of defendants' title; but there are many others of which this cannot be affirmed. Take, for example, F, G, and H streets; they extend lengthwise of the tract and crosswise of the principal reserved area; it is conceded that portions of them are affected by rights of way in favor of purchasers of lots bounded on them, and that a part of H street has become an undoubted highway; it cannot be affirmed, on the evidence here, even if it were the province of this court to determine, that the rights of the public and of the owners of abutting lots in these streets are confined to those portions thereof within the excepted blocks, etc., mentioned in the contract; there is ground for serious argument whether they ought not to be kept open throughout their length; or, if some portions of them may be lawfully closed, it is hard to see how those portions are to be ascertained, except by agreement or litigation, with more or less numerous persons interested in such asecrtainment as owners of neighboring lots; the circumstances *in pais* mentioned in *Archer* v. *Salinas*, 93 Cal. 53, need to be invoked.

5. Appellants further maintain that even allowing the dedication of all the streets laid out on the map, yet respondents had notice of the fact and contracted to buy subject to that easement. This is asserted on the evidence that in the course of the negotiation Kosh-

land, one of the purchasers, was shown copies of the map, knew that a townsite had been laid out on the tract by the Decoto Land Company, and that "there was a piece of land called Decoto—it was the town of Decoto that was to be sold." Since defendants were in express terms obligated to make good title as a condition of the sale, we do not concede that actual knowledge by the purchasers of dedication to public use of the extensive street surface exhibited on the map—the tract being mainly or largely agricultural and to be sold as acreage—could be deemed, while the contract remained executory, to imply a waiver of substantial fulfillment of the condition for title. (Sugden on Vendors, *390; *Speakman* v. *Forepaugh,* 44 Pa. St. 363, 374; compare Devlin on Deeds, secs. 911, 913, and cases cited.) But without passing on that question we think the contract itself forbids the construction that plaintiffs made a chancing bargain relative to streets other than those which had, like ' Railroad avenue,' become by use and improvement obviously and notoriously public highways. It provided for the sale—let us say — of the Decoto townsite, excepting " all lots or parts of lots, streets, or parts of streets that may have been heretofore sold and conveyed or contracted to be sold," etc. These terms, by excepting streets and parts of streets previously sold imply that the vendors assume the right now to sell the remaining streets. If one contract to sell a piece of woodland excepting so much of the standing timber as he had previously conveyed by proper writing, we suppose the fair inference would be that he undertook to sell all the timber which he had not so conveyed; and if it turned out that he owned none of the timber because it had been reserved in the deed under which he claimed the land, or for other reason, this fact would be good cause to the purchaser for refusing to take the title. So here, the reasonable construction of the contract is that defendants, the map before them, agree to make title to plaintiffs of unconveyed streets as well as lots; but it is found that there

are at least grave doubts whether they have right to con-
vey many of the streets; and the result is that they can-
not enforce specific performance of the contract, and
plaintiffs are entitled to return of their deposit.

The judgment and order appealed from should be
affirmed.

BELCHER, C., and SEARLS, C., concurred.

For the reasons given in the foregoing opinion the
judgment and order appealed from are affirmed.

HARRISON, J., GAROUTTE, J., VAN FLEET, J.

Hearing in Bank denied.