98 Cal.App.2d 426 (1950)
S. LAZ LANSBURGH, Appellant,
v.
MARKET STREET RAILWAY COMPANY (a Corporation), Respondent.
Civ. No. 14420. 
California Court of Appeals. First Dist., Div. Two. 
July 13, 1950.
 S. Laz Lansburgh, in pro. per., for Appellant.
 Cyril Appel, Ivores R. Dains and George Liebermann for Respondent.
 NOURSE, P. J.
 S. Laz Lansburgh, as assignee of and substituted for the original plaintiff Timothy S. Sheehan, appeals from a judgment denying his recovery of an amount of $20,000 paid by said Sheehan to Market Street Railway Co. on the purchase price of $400,000 for certain real property at Market and Valencia Streets in San Francisco.
 The agreement to sell, consisting of a uniform deposit receipt for $10,000 dated September 20, 1947, and an approval of seller signed within 10 days thereafter, required purchaser to pay an additional deposit of $10,000 upon the approval of seller, and to examine title and report valid objections thereto not later than December 30, 1947; seller would have 90 days thereafter to remove them and give purchaser written notice of removal and purchaser five days after removal to pay the balance of the purchase price to City Title Insurance Company, seller to deliver to said title company a grant deed "conveying good title insured as such by said title company." If an objection were not timely removed purchaser could elect *428 to terminate the agreement and have the deposit returned; if purchaser defaulted the agreement would terminate and forfeiture of the deposit be the sole remedy of seller. Time was made of the essence.
 Purchaser paid the additional deposit, ordered title research by the named title company, and on December 29, 1947, reported 10 objections to the title of which only the last one is still relevant. It reads: "10. Project for extension of Gough Street from Market to Otis Street, with contemplation of purchase of portion of this property therefor, as shown by preliminary plans on file in the office of the Department of Public Works." In relation to other objections seller, who previously on December 29, 1947, had deposited a grant deed with the title company, notified purchaser on February 9, 1948, that a decree establishing title as to all persons had been obtained in the San Francisco Superior Court and had been recorded, but with respect to the asserted tenth objection seller evidently could take no measures. On April 2, 1948, purchaser informed seller of his election to terminate the agreement on the ground that some of the objections specified had not been removed and could not be timely removed and demanded return of the deposit. The return was refused and this action was commenced soon thereafter.
 The amended complaint contained over and above a count for money had and received one based on the failure to remove the tenth objection quoted above and alleging that defendant did not have good title insured as such by the named title company and was unable to deliver a deed conveying such title. With respect to the Gough Street project it was alleged, and the truth of these allegations was stipulated at the trial, that on July 28, 1947, the Board of Supervisors of the City and County of San Francisco adopted a resolution declaring that public interest and necessity demanded the carrying out of said project and that it would require the incurring of a bonded debt; that on September 22, 1947, said board of supervisors adopted an ordinance calling a special election to be held on November 4, 1947, to submit the incurring of said bonded debt to the voters, which ordinance was approved by the mayor on September 23, 1947, and that in said special election on November 4, 1947, the proposition authorizing the incurring of said bonded indebtedness was adopted by the electors with the required majority. It was moreover proved that at the time the objection was made there was on record in the office of the department of public works a preliminary map of the *429 project dated November 26, 1947, from which it could be seen that a part of the planned extension would be within the boundaries of the property to be sold, and also that the part to be taken amounted to a little over 30,000 square feet. (The total area of the property to be sold was 3.08 acres or over 130,000 square feet.) The fact is not disputed (although its relevancy is) that on July 26, 1948, more than three months after the filing of this action, condemnation proceedings with respect to the above mentioned part of the property were commenced as part of the carrying out of the project. At the end of the trial it was stipulated that the basis of recovery was limited to the quoted tenth specification of objections. The findings were to the effect, among other things, that plaintiff's objections, especially the one numbered 10, were not valid, that defendant had good title and that the grant deed it deposited with the title company on December 29, 1947, conveyed good title; that the title company did not refuse to insure good title and that on April 2, 1948, when plaintiff elected to rescind he himself was in default.
 Appellant's main contention is that the preliminary steps taken by the city which showed a contemplated future acquisition of part of the property in behalf of the Gough Street extension made respondent's title defective or at least doubtful and therefore not marketable. He points out that in California the pendency of condemnation proceedings at the time fixed for performance, though commenced after the making of the agreement to sell, is considered an encumbrance upon the title which permits the purchaser to rescind as he is not required to accept the award instead of the real property for which he had contracted (Hunt v. Inner Harbor Land Co., 61 Cal.App. 271 [214 P. 998]; Ogren v. Inner Harbor Land Co., 83 Cal.App. 197 [256 P. 607]; Block v. Citizens Trust etc. Bank, 57 Cal.App. 518 [207 P. 510]), and further that a title must not only be free of actual defects but also of reasonable doubt and probable litigation. New York and Pennsylvania cases like Forster v. Scott, 136 N.Y. 577 [32 N.E. 976, 18 L.R.A. 543] and Ritter v. Hill, 282 Pa. 115 [127 A. 455] are cited for the proposition that filing of a map of a proposed street constitutes an encumbrance on the land even before condemnation proceedings have been commenced. The probability of condemnation proceedings make it at least doubtful that the purchaser will be able to retain the property and makes litigation nearly certain. *430
 We see serious flaws in this reasoning. [1] It is the condition of the title at the time fixed for performance which determines the rights of the parties to the agreement to sell. (8 Thompson on Real Property, 535; Craig v. White, 187 Cal. 489 [202 P. 648]; 55 Am.Jur. 717.) [2] When it is said that reasonable doubt or probable litigation are sufficient to make a title not marketable that expression refers to dubious defects, encumbrances, outstanding claims or color of title in others, which if upheld would prove the title defective at the time of performance. This applies to all cases cited in that respect by appellant. In Muller v. Palmer, 144 Cal. 305 [77 P. 954], the title of vendor depended upon a patent which by court decision had been declared erroneous and legal title vested again in the United States prior to the agreement to sell and the defect was only definitely cured four years after the closing time. In Koshland v. Spring, 116 Cal. 689 [48 P. 58], it was questionable whether certain parts of the land had prior to the contract to sell been dedicated as public highways and whether at the time for performance there were still easements to that effect. In Culligan v. Leider, 65 Cal.App.2d 51 [149 P.2d 894] it was dubious whether at the time of performance as extended there were still unlocated roving easements outstanding as not excepted encumbrances. In Snowden v. Derrick, 14 Cal.App. 309 [111 P. 757], the expression referred to is dictum as the defects existing at the time for performance were admitted. In the present case to the contrary it cannot be said that at the time for performance, as which we may consider the first three months of 1948, there was any claim of right of the city and county, dubious or not, outstanding in connection with the contemplated future condemnation of part of the property. [3] Neither the presence of the provisional map in the office of the department of public works, nor the authorization of the incurring of a bonded debt for the Gough Street extension project brought any change in the legal relations of the city and county and the owner with respect to the property. The city and county had still in the property in question no more than the same inchoate right of eminent domain which it had in all other property within its boundaries, a right which clearly is not an encumbrance or defect of title. This fact also distinguishes our case from New York and Pennsylvania cases like Forster v. Scott and Ritter v. Hill, supra. In those states a statute provided that the owner was not entitled to compensation for any improvement made after the filing of an official map on *431 any terrain within the lines of a street plotted on such map. Thus the filing of the map had a legal significance and impeded the free use of the property because thereafter building could only take place at the risk of losing its costs without compensation (Forster v. Scott, 136 N.Y. 577 [32 N.E. 976, 977, 18 L.R.A. 543]). Such restriction could well be considered an encumbrance. The same applies to all other cases in which the preliminary measures have some restricting legal effect. In California the filing of a map has no such effect and there is even no evidence that the map in the case before us was in any way official or ever recorded or publicly filed.
 It would seem that the first step with regard to condemnation which in California can be said to affect the legal relation of the owner to the property or to constitute an encumbrance is the issuance of summons, which marks the commencement of the proceedings and requires the filing of a lis pendens (Code Civ. Proc., 1243), and at the date of which the right to compensation and damages accrues and as of which date the value of the property taken and the damages are measured (Code Civ. Proc., 1249). Hunt v. Inner Harbor Land Co., Ogren v. Inner Harbor Land Co. and Block v. Citizens Trust etc. Bank, supra, are authorities for the proposition that the actual institution of condemnation proceedings between the date of the contract to sell and the time for performance make the title bad as a matter of law, notwithstanding the fact that the condemnation proceedings may still be abandoned by the plaintiff (Code Civ. Proc., 1255a) and title has not yet passed to him (Code Civ. Proc., 1253). The rejection by these cases of the rule followed in some other jurisdictions that institution of condemnation proceedings after the agreement to sell is a risk of the purchaser as equitable owner (annotation, 46 A.L.R. 818) is in line with the rejection in this state of the rule that accidental destruction of the property after agreement to sell should for the same reason be borne by him. (Conlin v. Osborn, 161 Cal. 659 [120 P. 755].) Nevertheless there remains some doubt whether in this state institution of condemnation proceedings before the closing day necessarily justifies rescission by purchaser, because the Supreme Court in denying a hearing in the Hunt case, supra, and two companion cases placed its ruling upon the ground that the property had been actually condemned and taken, the vendor presumably had received full compensation and that his answer was in effect a consent to the rescission of the *432 contract by the purchaser (61 Cal.App. at page 274; 25 Cal.Jur. 639). In the present case not only the circumstances stated by the Supreme Court are not shown but at the time set for performance no condemnation proceedings had been commenced and the only defect said to exist at that crucial time was the probability of the beginning of such suit at some indefinite time in the future. If such condemnation suit materializes after the time for performance, the injury should as a rule be suffered by the then owner and not deflected in advance to the seller who at any rate bears more risk in California than in some other jurisdictions.
 It is true that as a matter of fact long before the actual institution of condemnation proceedings relating to part of a property the possibility of such action shown by preliminary steps or plans or even discussion or rumors may influence the value of the property and its fitness for some intended use advantageously or disadvantageously. It is conceivable that under certain circumstances the influence may be such as to justify rescission by the purchaser, for instance on the theory of frustration, material failure of consideration, mistake or fraud. But in this case no factual basis for any of these theories is alleged or proved. Appellant's theory is that the reasonable probability of condemnation in the indefinite future is a cloud upon the title which if not expressly exempted makes the title bad and permits the purchaser to affirm or rescind the contract at his election independent of the purchaser's knowledge or lack of knowledge of that probability at the time of the contract, independent of the purpose for which he wished to acquire the property, independent of any detrimental effect of the probability or the later effectuation of the taking on the intended use or on the value of the property. Appellant has not cited any authority for this theory in a situation where, as in this case, the measures taken prior to the time for performance had no restricting legal effect whatever on the owner's rights. We have found none and see no reason to initiate a rule which seems unnecessarily inflexible and prejudicial to the owner, whose title would be branded unmarketable during the period, possibly extending over years, from the time that condemnation in the future becomes reasonably probable or certain until the actual institution of proceedings, a detriment which he can in no way remove and for which he cannot obtain compensation. We conclude that the seller's title was not defective as a matter of law. *433
 Appellant argues that in this case seller had not only agreed to convey good title, but good title insured as such by the named title company, that said title company in its report to the purchaser mentioned the Gough Street project as an objection, that said objection was not removed and that therefore the title company would not issue a policy insuring good title and respondent was unable to convey title so insured. Evidently to negative this contention the trial court made findings to the effect that the named title company did not refuse to insure good title and that the clause relating to the Gough Street project was inserted in its amended title report at the request of appellant and did not constitute a valid objection. These findings are supported by substantial evidence:
 Cyril Appel, attorney and vice-president of respondent, testified that officers of the title company had on three occasions declared their willingness to issue the policy and Lee Nathan, assistant secretary of the title company, testified that the eighth clause of the final report, identical with appellant's tenth objection quoted herein, was added to the original report delivered earlier to the parties, that he made a notation that said clause was requested by T. Sheehan, the purchaser "as a matter of information" and that the report showed what the property was subject to as of the date of delivery.
 Appellant argues that it was not sufficient that the title company did not refuse to insure title but that it was respondent's duty to make arrangements with the title company for such insured title. Appellant does not state clearly whether he contends that respondent under the agreement made should have paid for the title insurance policy or not. If he was under no duty to pay for the insurance it is not clear what further "arrangement" respondent should have made, other than ascertaining that the company was willing to issue the policy. According to the above evidence the company was willing to do so and respondent was informed of that fact. The court found after having taken evidence in that respect that respondent was not required to procure for appellant a policy of title insurance from the named company. Appellant contends that the finding is directly contrary to the provision of the contract. We need not decide whether in view of the evidence there was support for the finding as the finding is not decisive of any issue in the case. Appellant's rescission of April 2, 1948, was solely based on unremoved objections to the title and at the end of the trial it was stipulated that only the unremoved objection with respect to the Gough Street *434 project was the basis of the action. Even if appellant had been entitled to rescission on the ground of respondent's failure to procure an insurance policy, independent of the validity of said objection and of the company's willingness to insure good title, such ground would have been waived. Actually there was no dispute between the parties as to the manner in which the title insurance policy should be paid or procured but only with respect to the Gough Street project objection. That point having been decided against appellant the judgment must be affirmed.
 Judgment affirmed.
 Goodell, J., and Dooling, J., concurred.