Filed 7/14/22

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| PETROLINK, INC., | D079305 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. CIVVS1200383) |
| LANTEL ENTERPRISES, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Bernardino County, John M. Pacheco, Judge. Affirmed.

Bleau Fox, Martin R. Fox, Megan A. Childress and Elizabeth M. Martin for Plaintiff and Appellant.

Fullerton, Lemann, Schaefer & Dominick, Wilfrid C. Lemann and David P. Colella for Defendant and Respondent.

I.

INTRODUCTION

Plaintiff and appellant Petrolink, Inc. (Petrolink) returns to this court after two previous appeals, one from an original judgment, as discussed in *Petrolink, Inc. v. Lantel Enterprises* (2018) 21 Cal.App.5th 375 (*Petrolink I*),

and the second from an amended judgment entered after remand in *Petrolink I*, as discussed and affirmed in *Petrolink, Inc. v. Lantel Enterprises* (Mar. 18, 2021, D076583) [nonpub. opn.] (*Petrolink II*).

Petrolink filed an action against defendant Lantel Enterprises (Lantel), seeking specific performance of a lease agreement that gave Petrolink the option to purchase a commercial property owned by Lantel at fair market value; Lantel cross-complained against Petrolink, contending that Petrolink was refusing to purchase the property for its fair market value. The parties disagreed as to the valuation of the property and were effectively seeking a judicial determination as to the fair market value of the property so that they could complete the transaction. After years of litigation in the trial court, an appeal, a partial reversal of the judgment, remand, and further litigation, the trial court ultimately concluded that the fair market value of the property was $889,854. The court then calculated a net purchase price of $948,404 by subtracting from the fair market value a credit to Petrolink for the rents that it had paid from the date the purchase should have been completed, and adding a credit to Lantel for the loss of use of the sale proceeds. In its amended judgment, the court ordered the parties to complete the transaction; Petrolink was to deposit $948,404 in escrow and Lantel was to deliver title to the property "by grant deed free and clear of all encumbrances."

Petrolink filed an appeal from the amended judgment, arguing that it was entitled to certain additional financial reductions and offsets to the purchase price. We rejected Petrolink's contentions and affirmed the amended judgment in *Petrolink II*.

Eleven days after this court issued our opinion in *Petrolink II* and four days after Petrolink deposited the purchase funds in escrow, the State of California Department of Transportation (Caltrans) filed an eminent domain

2

action pertaining to the property at issue in this litigation. The filing of the Caltrans action prevented Lantel from being able to convey unencumbered title, as required by the amended judgment.

After Caltrans filed the eminent domain action, Petrolink refused to close escrow on the property, stating that it would do so only if Lantel deposited *unencumbered* title to the property in escrow.

Lantel filed a motion titled, "Notice of Motion and Motion for Order Compelling Performance Under Amended Judgment; Request for Sanctions" (some capitalization omitted). After a hearing, the trial court granted the motion, stating that it would "enforce the amended judgment." The court's order compels Petrolink to complete the purchase transaction by taking title to the property despite the encumbrance on title resulting from the Caltrans eminent domain action, thus effectively excusing Lantel from its obligation under the amended judgment to deliver title "free and clear of all encumbrances."

Petrolink appeals from the trial court's order enforcing the amended judgment, arguing that the Caltrans action encumbers title to the property as a matter of law, and that the court's order requiring Petrolink to complete the purchase of the property is erroneous because, in requiring the sale to be completed despite the encumbered title, the court improperly modified the judgment in a manner that materially alters the substantial rights of the parties.

We conclude that the trial court did not abuse its discretion in ordering Petrolink to accept title encumbered by the Caltrans eminent domain action. The filing of the eminent domain action rendered it impossible for Lantel to convey unencumbered title as contemplated by the terms of the amended judgment, through no fault of either party. Faced with this scenario, the trial

3

court weighed the equities and concluded that it would be more equitable for Petrolink to bear any burden of the encumbrance created by the filing of the Caltrans action. We therefore affirm the trial court's postjudgment order compelling Petrolink to complete the purchase transaction.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

The dispute between Petrolink and Lantel, which has been pending in the courts since 2012, arose from a lease agreement pursuant to which Petrolink leased a commercial property owned by Lantel. Petrolink was in possession of the property prior to this dispute and has been in possession of the property throughout the pendency of the litigation.

In addition to providing the terms by which the property would be leased, the lease agreement included a provision that gave Petrolink the option to purchase the property at fair market value. Pursuant to the terms of that provision, in 2011 Petrolink notified Lantel of its desire to exercise the purchase option. However, the parties could not reach agreement as to the fair market value of the property.

Petrolink sued Lantel and Lantel cross-complained. Each party claimed that the other had refused to complete the sale and purchase transaction and sought to compel the other to perform under the contract. The primary issue in dispute at the trial was the fair market value of the property at the time Petrolink exercised its purchase option. The trial court ultimately determined that the fair market value of the property as of August

---

[1] The factual and procedural background that we provide in this section is taken from our prior opinions in *Petrolink I, supra*, 21 Cal.App.5th 375 and *Petrolink II, supra*, D076583, with the exception of our recitation of the proceedings that occurred subsequent to our issuance of the opinion in *Petrolink II.*

25, 2011—the date of Petrolink's letter notifying Lantel of its desire to exercise the purchase option in the lease agreement—was $889,854.

Petrolink had requested that the trial court grant Petrolink an offset against the $889,854 purchase price for the amount of rents that it had continued to pay to Lantel after it exercised the purchase option and during the pendency of the litigation. The trial court denied Petrolink's request for an offset and ordered Lantel to sell the property to Petrolink for $889,854. Petrolink appealed from the judgment.

In our opinion in *Petrolink I, supra*, 21 Cal.App.5th at page 379, we concluded that Petrolink was entitled to an offset against the purchase price for the rents that it had paid throughout the pendency of the litigation. We determined that, to the extent the trial court had denied Petrolink an offset for these rents, the court had "failed to account for the delayed performance of the contract for purchase and sale" by "fail[ing] to place the parties in the positions in which they would have been at the time the sale and purchase contract should have been performed." (*Ibid.*) We therefore directed the trial court "to determine the reasonable date on which the contract for purchase and sale should have been performed, and . . . to consider what financial adjustments must be made in order to relate the parties' performance back to the date that the contract should have been performed." (*Id.* at p. 389.)

On remand from *Petrolink I*, the trial court determined that the date on which the contract should have been performed was December 26, 2011. The trial court granted Petrolink an offset for rents that it had paid after that date, and awarded Lantel compensation for its loss of use of the proceeds of the sale. The court thereafter entered an amended judgment on September 5, 2019, which ordered that "[u]pon receipt of $948,404 from Petrolink, Lantel shall convey the Property to Petrolink by grant deed and free and clear of all

5

encumbrances." The amended judgment also specified that Petrolink was to pay Lantel the purchase amount "within 45 days of the date of service of this Judgment on the parties."[2]

Petrolink appealed from the amended judgment, arguing that the trial court erred in failing to perform certain additional financial adjustments for which Petrolink had advocated.[3] In *Petrolink II, supra*, D076583, filed on March 18, 2021, we rejected Petrolink's arguments regarding additional financial adjustments and affirmed the trial court's amended judgment.

One week later, on March 25, 2021, Petrolink deposited in escrow the additional funds required of it, in compliance with the terms of the amended judgment.

---

[2] The text of the decree portion of the amended judgment reads:

> "Judgment is granted for Petrolink on the cause of action for specific performance only. Upon receipt of $948,404 from Petrolink, Lantel shall convey the Property to Petrolink by grant deed and free and clear of all encumbrances. Pending receipt of $948,404 from Petrolink, which is to occur within 45 days of the date of service of this Judgment on the parties, Lantel is enjoined from conveying or encumbering the Property."

[3] In its appeal from the amended judgment, Petrolink contended that the trial court erred in determining the value of the property on remand from the first appeal by: (1) applying the future income stream to the fair market value price of the subject property, (2) not awarding Petrolink interest on the portion of monies it had deposited in escrow on February 8, 2016, (3) finding that Petrolink was not entitled to interest on the rent money that it had paid Lantel, and (4) denying Petrolink the value of loss of the use of the funds that it had been required to post as a bond between November 28, 2016 to October 22, 2018.

On March 29, 2021, Caltrans filed an eminent domain action that would, if successful, condemn some or all of the property at issue in this case. The Caltrans action named both Lantel and Petrolink as defendants.

After the filing of the Caltrans action, Petrolink refused to accept delivery of title to the property from Lantel, thereby preventing escrow from closing. Petrolink contended that the Caltrans action encumbered the title to the property, rendering Lantel unable to perform pursuant to the terms of the amended judgment and excusing Petrolink from any obligation to close escrow.

After it became clear that Petrolink would not accept title and permit escrow to close, Lantel filed a motion in the trial court titled, "Notice of Motion and Motion for Order Compelling Performance Under Amended Judgment; Request for Sanctions" (some capitalization omitted). In its opposition to Lantel's motion, Petrolink argued that it should not be required to complete the transaction because title to the property was "encumbered and bad as a matter of law." (Underscoring and capitalization omitted.) Petrolink did not offer any suggestion as to how it believed the judgment could be effectuated and escrow closed; Petrolink contended only that it did not have to accept title as encumbered by the Caltrans action.

Lantel argued in reply that it had not had possession of the property throughout the proceedings and had not received any money from Petrolink during the pendency of the proceedings, despite the fact that Petrolink has been in possession of, and had use of, the property. Lantel also contended that it had no real substantive ownership interest in the property that should cause it to remain a party in the Caltrans action, because, according to Lantel, Petrolink is the "prima facie owner of the Property" under the amended judgment.

After conducting a hearing on the matter, the trial court concluded that it would "grant the motion and proceed to enforce the amended judgment," despite the fact that both parties conceded that it was impossible for Lantel to deliver unencumbered title to the property. While noting elsewhere in its order that "[t]his is an unusual procedural situation and Petrolink correctly observed Lantel is unable to provide clear and unencumbered title," the trial court determined that "[i]t is . . . legally proper and equitable that Petrolink bear the burden of the Caltrans Action." In reaching this conclusion, the court relied in part on the fact that, if the parties had been able to agree on a purchase price and had completed the sale at the time Petrolink exercised its purchase option in 2011, as contemplated in the lease agreement, Petrolink not only would have been in possession of the property at the time the Caltrans action was filed, but would also have been the owner of the property.[4] After concluding that there was no legal impediment to imposing on Petrolink the burden of the encumbrance on the title to the property, and further concluding that, in weighing the equities, it would be *more equitable* to place the burden of the encumbrance on Petrolink, the court ordered Petrolink to complete the purchase transaction. The court's order thus had the effect of implicitly modifying the amended judgment to excuse Lantel from having to convey to Petrolink unencumbered title.

---

[4] The court explained that if the transaction had been completed as contemplated and not delayed as a result of this protracted litigation, Petrolink "would have already taken title long before the Caltrans Action was filed." The court relied on this as a factor weighing in favor of concluding that it would not be unfair to place the burden of the Caltrans action on Petrolink, rather than on Lantel.

Petrolink filed a timely notice of appeal from the trial court's postjudgment order compelling it to complete the purchase transaction and close escrow as required by the amended judgment.

## III.

## DISCUSSION

Petrolink's argument on appeal is, essentially, the following: (1) the amended judgment required Lantel to convey unencumbered title; (2) the filing of the Caltrans action encumbers title to the property, as a matter of law, such that Lantel is unable convey unencumbered title to the property while the Caltrans action is pending (and potentially after it is concluded if the result of that action is the taking of some portion or all of the property); (3) in ordering Petrolink to complete the purchase transaction and take encumbered title, the trial court improperly modified the amended judgment in a way that affects the parties' substantial rights; and (4) the court was without authority to modify the amended judgment in this manner.

In response, Lantel agrees that the Caltrans action "constitutes an encumbrance on the Property." However, Lantel contends that the amended judgment's reference to Lantel's obligation to convey the property by grant deed "free and clear of all encumbrances" can be reasonably understood to refer only to encumbrances "caused by Lantel." According to Lantel, "[a]ny other interpretation of the Amended Judgment is illogical and contrary to law," because, Lantel asserts, "Lantel cannot be held accountable for liens it does not control, much less liens created in the *years* of delay caused by Petrolink's unwillingness to close escrow." Lantel further contends that "[t]he time 'fixed for performance' [of the transaction] expired before the Caltrans Action was initiated." (Boldface, underscoring, and italics omitted.) In support of this contention, Lantel quotes Petrolink's opening brief, in

9

which Petrolink asserts that " '[i]t is the condition of title at the time fixed for performance which determines the rights of the parties to the agreement to sell,' " (boldface, underscoring, and italics omitted) and suggests that the time "fixed for performance" was, at the latest, October 20, 2019, which was 45 days after service of the amended judgment was effected.

Lantel also argues that the trial court had the authority to "give effect to the Amended Judgment," and further contends that the court's order "did not 'materially alter the substantial rights of the parties.' " Lantel's suggestion that the parties' substantial rights were not altered is based in part on its contention that the amended judgment required only that Lantel not encumber the property *through its own conduct*, and not that it provide title clear of encumbrances over which it had no control.

We conclude that neither party's analysis is entirely correct and that the path to resolution of this appeal lies somewhere between the parties' respective positions. As we explain, we ultimately conclude that the appropriate disposition is to affirm the trial court's order compelling Petrolink to accept title in its present condition and allow escrow to close.

We begin our analysis with the fundamental principle that a trial court's order "is presumed to be correct, and all intendments and presumptions are indulged to support it on matters as to which the record is silent. [Citation.] It is the appellant's burden to affirmatively demonstrate error. [Citations.]" (*In re Marriage of Gray* (2002) 103 Cal.App.4th 974, 977–978.)

The next step in our analysis of Petrolink's appeal is to determine the applicable standard of review. The order from which Petrolink has appealed is an *order compelling specific performance* of a judgment, which is, itself, a judgment *decreeing the specific performance* of a property sale transaction.

10

The trial court styled its order as an order "[g]rant[ing] Lantel's motion for order compelling performance under amended judgment." Although there is no rule that provides a general standard of review for every iteration of an order addressing a "motion to compel," an order compelling a party to perform an affirmative act is inherently an order for specific performance. (See, e.g., *Brock v. Kaiser Foundation Hospitals* (1992) 10 Cal.App.4th 1790, 1795 [a petition to compel arbitration pursuant to Code of Civil Procedure section 1281.2 "is in essence a suit in equity to compel specific performance of the arbitration agreement"].) Judgments and orders granting or denying specific performance (including the amended judgment for specific performance in this case) are reviewed under an abuse of discretion standard. (See *Petersen v. Hartell* (1985) 40 Cal.3d 102, 110 [the remedy of specific performance is a discretionary, equitable remedy, and reviewing courts apply the abuse of discretion standard of review to the granting or denial of specific performance].) Thus, in compelling Petrolink to complete its performance under the amended judgment, the trial court was exercising its discretionary authority.

Further the language of the trial court's order clearly indicates that the order constitutes an exercise of the court's equitable powers; the trial court recognized that it had to weigh equities and decide on which party the burden of the new encumbrance on title to the property should fall, given that this encumbrance was the result of the action of a third party and was not within the control of either party. The court noted that the motion "raises the question of which party should bear the burden of the cloud on title caused by the Caltrans Action," and ultimately determined that it is *more* "equitable that Petrolink bear the burden of the Caltrans Action."

11

We therefore conclude that the abuse of discretion standard of review applies to the trial court's ultimate determination that compelling Petrolink's performance under the amended judgment, while excusing Lantel from its obligation under that judgment to deliver unencumbered title, is an equitable result.[5] "When a trial court makes a ruling based on equitable considerations, the abuse of discretion standard applies on review of that ruling." (*Lin v. Jeng* (2012) 203 Cal.App.4th 1008, 1025.) "Under [the abuse of discretion] standard, '[t]he trial court's "application of the law to the facts is reversible only if arbitrary and capricious." [Citation.]' " (*Cummings v. Dessel* (2017) 13 Cal.App.5th 589, 597.)[6]

With these appellate principles in mind, we turn to the parties' contentions. Lantel acknowledges that the Caltrans action constitutes an encumbrance on title, but suggests that the trial court's ruling may be affirmed because, in requiring Lantel to provide title free and clear of all encumbrances, the amended judgment can be reasonably understood to refer

---

[5]     We therefore disagree with Petrolink's contention that the only standard of review applicable in this appeal is the de novo standard of review.

[6]     A court has broad discretion in exercising its equitable powers. (See, e.g., *Abers v. Rohrs* (2013) 217 Cal.App.4th 1199, 1208 ["The trial court's discretion to grant or deny equitable relief is broad, and we must indulge all inferences in favor of its decision"]; *Estates of Collins & Flowers* (2012) 205 Cal.App.4th 1238, 1246 ["A trial court sitting in equity has broad discretion to fashion relief"]; *Richmond v. Dofflemyer* (1980) 105 Cal.App.3d 745, 766 [court proceeding in equity "has broad powers and comparatively unlimited discretion to do equity"]; *Bechtel v. Wier* (1907) 152 Cal. 443, 446 ["From the very nature of equity, a wide play is left to the conscience of the chancellor in formulating his decrees, that justice may be effectually carried out. It is of the very essence of equity that its powers should be so broad as to be capable of dealing with novel conditions"].)

only to encumbrances "caused by Lantel," or for which Lantel is to blame. We disagree with this interpretation of the amended judgment.[7] The amended judgment imposed on Lantel an obligation to convey title to the property that was clear of "all" encumbrances, without regard to how the encumbrance arose or whether it was the result of Lantel's own action or inaction or instead, the action of a third party.

We also disagree with Lantel's contention that "[t]he time 'fixed for performance' [of the sale transaction] expired before the Caltrans Action was initiated."[8] (Boldface, underscoring, and italics omitted.) Lantel argues that "performance [of the agreement to sell] was fixed for October 20, 2019." (Underscoring and boldface omitted.) The October 20, 2019 date, Lantel contends, is the date by which Petrolink was to deposit the $948,404 purchase funds and Lantel was to convey title to the property—i.e., the final date that would meet the amended judgment's requirement that the purchase

---

[7] The trial court also appears to have implicitly rejected this interpretation of the amended judgment. If the court had agreed with Lantel's interpretation, it would not have had to weigh the equities of the situation to reach its result; instead, the court could have simply concluded that the Caltrans action did not constitute the type of encumbrance prohibited by the amended judgment.

[8] In making this assertion, Lantel is referring to Petrolink's argument in its opening brief that title to property is encumbered and "bad as a matter of law" (boldface and capitalization omitted) when a condemnation action is filed before the time set for performance of a contract to sell land. Petrolink asserts in its opening brief that the "trial court correctly found that the filing of the Caltrans Action encumbered the Property," and quotes *Lansburgh v. Market Street Railway Co.* (1950) 98 Cal.App.2d 426, 430 (*Lansburgh*) for the proposition that "[i]t is the condition of the title at the time fixed for performance which determines the rights of the parties to the agreement to sell."

13

funds be delivered "within 45 days of the date of service of [the amended judgment]."

In making this argument, Lantel fails to acknowledge that Petrolink's appeal and its posting of an undertaking, as required by the trial court, served to stay the amended judgment and render that judgment unenforceable until it became final. (See Code of Civ. Proc., § 917.4.) Because a judgment is subject to possible modification or reversal through appellate review, that judgment becomes final only after the appellate process has been completed or the time to seek review has elapsed. (See *Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 303–304 [although there can be other meanings of the phrase " 'final judgment' " depending on " 'the purpose for which and the standpoint from which it is being considered,' " typically "a judgment is not 'final' as long as it remains subject to direct attack by appeal, by motion for a new trial, or motion to vacate the judgment"].) For example, if this court had agreed with any of Petrolink's arguments in *Petrolink II*, the amended judgment could have been reversed or modified and returned to the trial court. Under such circumstances, the trial court could not have given effect to the amended judgment as originally contemplated. Because a trial court cannot enforce a judgment for specific performance that has been stayed pending appeal, that judgment cannot be considered to have fixed a date for performance until the stay has been lifted—i.e., once the judgment is final in that there is no possibility it will be altered on appeal. Therefore, the time "fixed for performance" (*Lansburgh, supra*, 98 Cal.App.2d at p. 430) of this transaction was no more than 45 days after the date of service of an amended judgment that *was final*.[9] For this

---

[9] Even if the trial court intended for the parties to perform pursuant to the amended judgment within 45 days of service of that judgment, as a

14

reason, we reject Lantel's contention that the time "fixed for performance" of the transaction at issue in this case was a date prior to 45 days after the amended judgment in this case became final.[10] It is apparent that under this calculation of the relevant time periods, the Caltrans action was initiated *prior to the date fixed for performance of the terms of the amended judgment.*

However, this does not end our inquiry into the propriety of the trial court's order. Although we agree with Petrolink that the filing of the Caltrans action operated to encumber title to the property, and that, in turn, the encumbrance resulting from the filing of the Caltrans action resulted in Lantel being unable to fully perform pursuant to the terms of the amended judgment, we disagree with Petrolink's contention that the trial court was powerless to do anything to bring this matter to a final resolution.

Petrolink argues that the trial court did not have the authority to order Petrolink to perform its obligations under the amended judgment because requiring Petrolink to accept encumbered title effectively modified the amended judgment. In support of this argument, Petrolink cites to authorities that state the general rule that a trial court may not modify a judgment that it has issued in such a way as to alter the substantial rights of

matter of law, the taking of the appeal and the stay preventing enforcement of the judgment meant that the court could not require that the parties perform their obligations under the amended judgment by that date.

[10] This court's opinion affirming the amended judgment became final 30 days after the opinion in *Petrolink II* was issued (see Cal. Rules of Court, rule 8.264(b)(1)); Petrolink then had an additional 10 days during which it could have sought Supreme Court review of the matter (Cal. Rules of Court, rule 8.500(e)(1)). If a party does not seek review from the Supreme Court within this time frame, then the judgment becomes final. In this case, because Petrolink did not seek review in the Supreme Court, the date on which the amended judgment became final was 40 days after this court issued its opinion in *Petrolink II*.

15

the parties under the original judgment. (See *LaMar v. Superior Court* (1948) 87 Cal.App.2d 126, 129 (*LaMar*) [stating that a "court has inherent power to correct a judgment so as to make it actually express the decision declared by the court and such power may be exercised after appeal and affirmance of the judgment as well as before an appeal has been finally determined, provided that the amendment does not affect the substantial rights of the parties"].) Petrolink also cites to authorities for the proposition that a court may not use its " ' "authority to correct clerical error" ' " to "substantially modif[y] the original judgment or materially alter[ ] the rights of the parties." (See *People v. Davidson* (2008) 159 Cal.App.4th 205 (*Davidson*); *In re Candelario* (1970) 3 Cal.3d 702; *Leftridge v. City of Sacramento* (1941) 48 Cal.App.2d 589 (*Leftridge*).) We do not disagree with these general propositions; it is usually true that a court may not revisit a judgment that has already been issued in order to alter it in some substantive way. However, this general rule gives way to a more specialized rule in situations in which the judgment governs future events, such as a judgment ordering nuisance abatement or other injunctive relief, including orders requiring specific performance, and a change in circumstances renders modification of the judgment necessary or appropriate.[11] Specifically, in a circumstance in which a trial court issues a judgment governing future actions and there exists the possibility of an unforeseen change in circumstances over which the judgment has no control, the court retains the inherent authority to modify that judgment when such changes in circumstances render modification necessary or appropriate. (See Rest.2d Judgments, § 73, com. b.) Section 73 of the Restatement Second of

---

[11] An award of specific performance is, essentially, an affirmative injunction. (See Miller & Starr, 12 Cal. Real Est. (4th ed.) § 40:23.)

16

Judgments explains that there may be circumstances under which modification of a judgment is appropriate even where no express reservation of the right to modify is included in the judgment:

> "Judgments governing future events. *Judgments that govern continuing or recurring courses of conduct may be subject to modification even though the power of doing so is not expressly provided. . . .* Whether a judgment whose modification was not expressly anticipated ought to be open to modification depends on the nature of the controversy resolved by the judgment and the remedy awarded. . . .
>
> "[*T*]*he principal factor in whether a judgment is subject to modification is whether it contemplates an interaction between the activity of the judgment obligor and some other conditions over which the judgment does not exercise control. When an unforeseen or uncontrollable interaction occurs between the judgment obligor and the surrounding circumstances, the balance between burden and benefit can be disturbed. If the disturbance assumes substantial proportion, redress by modification may be appropriate.*" (Italics altered.)

Applying the rule described in the Restatement Second of Judgments to the factual scenario presented in this case, it is undisputed that the filing of the Caltrans action is a condition over which the judgment exercised no control. Specifically, the judgment contemplates an interaction between Lantel's obligation to deliver unencumbered title and potential circumstances that the judgment was without any ability to control, such as a third party encumbering the property through an eminent domain action. Further, the balance between the burden and the benefit of the judgment was disturbed— the filing of the Caltrans action rendered it impossible for Lantel to fulfill its obligation under the terms of the amended judgment to deliver unencumbered title. Thus, if the court had not modified the judgment in the way that it did, it would have had to modify it in some other way. It was

17

simply not possible to continue to require both parties to perform as ordered in the amended judgment.[12]

None of the authorities on which Petrolink relies involves a judgment that governed future events where modification was necessary because a change of circumstances had rendered full compliance with the judgment impossible. (See *LaMar, supra*, 87 Cal.App.2d at pp. 130–131 [addressing power of trial court to make "corrections in the judgment necessary to carry it into effect" where court had failed to include the "language usual in a money judgment" and this failure prevented the petitioner from being able to obtain a writ of execution for enforcing the money judgment]; *Davidson, supra*, 159 Cal.App.4th at pp. 209–211 [affirming criminal judgment after a conviction for attempted murder was reinstated after the defendant's conviction for murdering the same victim was reversed on appeal and the People indicated that they were unable to proceed with a retrial]; *In re Candelario, supra*, 3 Cal.3d at pp. 704–705 [concluding that trial court's act in amending a criminal judgment to include a prior conviction that neither the court's minutes nor abstract of judgment showed was found true did not constitute a "clerical error" but was instead judicial error and not correctable]; *Leftridge, supra*, 48 Cal.App.2d at pp. 591–595 [after trial court issued preemptory writ of mandate directing Civil Service Board to investigate and determine prevailing wage scale for work performed by

---

12    Even delaying performance of the judgment by either party until resolution of the Caltrans action could have resulted in a de facto modification of the judgment because it is not clear that Caltrans would not take the entire property, or if it did not, what would remain of the property at the conclusion of the Caltrans action. In addition, by the time the Caltrans action is resolved, which will be potentially years from now, the purchase price in the judgment would likely not be close to the value of the property at the time the transaction could finally take place.

plaintiffs and the obligation was satisfied, the trial court later attempted to modify, nunc pro tunc, the prior preemptory writ to include ruling that the plaintiffs were owed no money, even though that issue had not been determined in the writ proceeding].) These cases are therefore distinguishable and do not convince us that the rule expressed in the Restatement Second of Judgments regarding the court's authority to modify a judgment governing future events when those events are affected by circumstances outside the control of the judgment should not apply in this case. We therefore reject Petrolink's contention that the trial court did not have the authority to modify the amended judgment in a manner that it deemed equitable in order to bring the matter to a close, given that changed circumstances made it impossible for one of the parties to perform according to the terms of the amended judgment as originally contemplated.

We next consider whether the trial court's weighing of the equities, and specifically, its modification of the judgment in a manner that it deemed to be the most equitable under the circumstances, was arbitrary or capricious. We conclude that the court's resolution of the matter was not arbitrary or capricious. The burden of the Caltrans eminent domain action had to fall somewhere, and the equities did not clearly favor one party over the other. Petrolink had been in possession of the property during the entire time that this case was being litigated—a fact of which the trial court was well aware. It was reasonable for the court to have considered this fact, together with the fact that, if the parties had not been litigating this case for approximately a decade, Petrolink would not only have been in possession of the property, but would also have been the owner of record of the property at the time the

19

Caltrans action was filed.[13]  Faced with less than ideal options, the trial court's determination that, under these circumstances, it would be fairer to require Petrolink to complete the transaction and take title to the property despite it being encumbered by the Caltrans action than it would be to modify the amended judgment in some other way, was reasonable.  We therefore affirm the court's postjudgment order.

IV.

DISPOSITION

The order of the trial court is affirmed.  The parties shall bear their own costs on appeal.

AARON, J.

WE CONCUR:

HUFFMAN, Acting P. J.

DO, J.

---

[13]    To the extent that Lantel contends that Petrolink was required to take encumbered title, as a matter of law, because the transaction should have taken place as of December 26, 2011, and that as a result, that date was the time fixed for performance of the contract, such analysis would be erroneous, and the trial court does not appear to have employed this analysis.  Instead, the court appears to have relied on the fact that, *as a matter of equity*, it was relevant to consider that Petrolink wanted to take title to the property prior to December 26, 2011, and that if the parties had been able to agree on a purchase price at the time Petrolink exercised its purchase option, Petrolink would have been in possession of the property and would also have held title.